No. 41.—BENJAMIN H. CAMERON *et. al.* plaintiffs in error, *vs.* STEPHEN WARD, defendant.

[1.] Where C and J obtained the legal title to land, as *security* for a small sum advanced to W, under peculiar circumstances—the sum advanced not being one-fourth the alleged value of the land—promising to re-convey the same to W, on the re-payment of the sum advanced with interest, but who fraudulently conveyed the land to a *bona fide* purchaser : *Held*, on a demurrer to the bill, insisting on the Statute of Frauds, as a bar, that the demurrer should be overruled—that the Statute was intended to *prevent fraud*, not to *protect it;* and that in such cases, a Court of Equity would take hold of the conscience of the defendants, and hold them as *trustees*, for the benefit of the party defrauded.

Bill, &c. in Troup. Decision by Judge HILL, at November Adjourned Term, 1849.

This bill alleges, that in 1835, Stephen Ward purchased of one Thomas Walker, lot No. 2, in 11th District of Troup, for $750 ; that Walker had bought of one Christina Thomas, the drawer, in 1832 ; Ward went into immediate possession, and so continued until the latter part of 1847 ; that in 1835, he wrote to the Surveyor General to know if the grant had issued, and was informed that it did issue before the purchase by Walker; that in 1847, he learned that said lot had been granted, under the then late law, to Thomas Whitaker, and sold by him to Pleasant Compton ; that in November, 1847, he went to Milledgeville, and that Compton, under the peculiar circumstances, agreed to sell him the lot for $200 ; that the defendants below, Cameron and Johnson, being there, as members of the Legislature, and his immediate representatives, in whom he had great confidence, advised him to pay

the $200, and thus keep his homestead; that upon his replying, that he had not the money with him, they agreed to advance him the $200, and for their security, were to take the title in their own names, which they agreed to make to him on their return home, upon his refunding the money with interest; that having a little more money with him than sufficient to pay his expenses home, he handed them $20 towards the land; that about 25th December thereafter, about the time he expected them home, he procured the money, and sent it by a friend to Cameron's house, and learned that he had not then returned; that shortly after, he was taken sick, and about 1st February, 1848, he procured the money to be again carried to Cameron, who informed the messenger that Johnson had sold the land to one Wm. A. Spear; that the money was then tendered to Johnson, and a deed demanded, who declined making it, for the reasons named. The value of the land is alleged to be one thousand dollars. The bill prays that defendants below be decreed to pay the value of the land, $1000. This bill was demurred to—

1st. Because it showed on its face, that complainant had as ample and adequate relief at Common Law, as in Equity.

2d. That there was no equity in the bill, and insisting on the Statute of Frauds.

The Court overruled the demurrer, and ordered defendants to answer, &c. To which ruling, defendants excepted, and thus the case comes up.

B. H. HILL and STOKES, for plaintiff in error.

COLE, for defendant in error.

*By the Court.*—WARNER, J. delivering the opinion.

[1.] The complainant alleges that he purchased the lot of land in controversy, in 1835, from Walker, for which he paid $750 00, went into the possession of it, and made valuable improvements, not doubting the grant from the State had issued; that in 1847, to his surprise, he learned that the lot was not granted at the time of his purchase from Walker, but had been granted to one Whitaker, under the late Act of the Legislature, who had sold it to Compton; that he visited Milledgeville during the session of the

Legislature of 1847, to see Compton in relation to the land, who, under the *peculiar* circumstances of the case, agreed to sell the land to him for $200, which the complainant alleges was worth $1000. The defendants being the friends, both personal and political, of the complainant, and his immediate representatives in the Legislature, and having entire *confidence* in them, he sought their counsel and advice in the matter.   They advised him to purchase the land at the price which Compton offered to take for it.   On the complainant telling them he did not have the money with him, the defendants offered to advance it for him, and for their *security*, agreed to take the title in their own names, and on their return home, re-convey the same to the complainant, upon his refunding them the $200, with interest thereon; whereupon, Compton executed the title to them, they having advanced to the complainant the $200 in payment therefor.   Before leaving Milledgeville, the complainant, finding he would have more money than sufficient to pay his expenses, paid over to them $20, in part payment of the $200 advanced to him.   The complainant sent the money to one of the defendants, before the 25th December, but Cameron had not then returned home.   Complainant was taken sick, and was not able to go and refund the money in person immediately after their return home, but about the first of February, 1848, he sent the money to Cameron, one of the defendants, by the hand of A. Wilkinson, who was told by Cameron, that Johnson, the other defendant, had sold the land to Spear, and made a deed to it, and refused to receive the money.

So, it will be perceived, from the allegations in the complainant's bill, which, for the purpose of this decision, must be taken to be true, that the defendants, taking advantage of the *confidence* of the complainant, and obtaining the deed only as *security* for the money advanced by them, to enable the complainant to purchase the land from Compton, for the *small sum* of $200, when it was worth $1000, they now seek to appropriate the benefit of complainant's *low purchase* to themselves, and to realize the full value of the land, and when he calls upon them to account with him, they confess the allegations made in the bill by their demurrer, and insist on the Statute of Frauds, as a bar to his right to call them to account for this act of bad faith on their part.

The Statute of Frauds was enacted to *prevent* fraud, not to *protect* such a transaction as this is alleged to be.   Mr. Justice *Story,*

speaking of the Statute of Frauds, says : " In the construction of that Statute, a general principle has been adopted, that, as it is designed as a protection *against fraud*, it shall never be allowed to be set up as a protection and *support of fraud*." 1 *Story's Equity*, 323, §330.    *Roberts on Frauds*, 79, 103.    *Strickland vs. Aldridge*, 9 *Vesey*, 516.    *Mestaer vs. Gillespie*, 11 *Vesey*, 627, '8. *Brown vs. Lynch*, 1 *Paige's Ch. Rep.* 147.    This is a proper case for Equity jurisdiction.    In cases of *fraud*, a Court of Equity will take hold of the conscience of the defendant, and hold him as a *trustee*, for the benefit of the party defrauded, and not allow him to shelter himself under the Statute of Frauds, as he might do in a Court of Law.

The defendants, in justice to themselves, ought to answer the allegations in this bill, and the Court below, very properly, overruled their demurrer.

Let the judgment of the Court below be affirmed.