## JENKINS *v.* LANE *et al.*

1. Plaintiffs in equity can at any stage of the cause, as a matter of right, amend their pleadings in matters of form or substance, if there is enough in the pleadings to amend by.

(*a*) The right to amend is very broad, and the practice of allowing amendments is very liberal.

(*b*) Amendment is a resource against waste.

(*c*) If an amendment is germane to the original cause of action, it should be allowed.

(*d*) Amendments making an entirely new and different case from that made in the original bill are not, on that account, admissible.

(*e*) A petition which was brought by the heirs at law and legatees of a grantor against his son for the purpose of cancelling certain deeds from the former to the latter, on the ground that the same were void because the grantor was mentally incapable of making them, and because the same were procured by fraud practiced on the grantor by the grantee, and for the recovery of the property conveyed by said deeds, and its division among the plaintiffs and other heirs at law and legatees of the grantor, could be amended by striking out all allegations as to the mental incapacity of the maker of the deeds and the prayer for cancellation, by amplifying and varying the allegations of fraud by which the deeds were procured, and by adding a prayer that the property embraced in the deeds be declared to be impressed with an implied trust in favor of the grantor and his heirs at law and legatees, and that the grantee be decreed to hold such property as trustee for the grantor; and such amendment did not set up a new and distinct cause of action.

2. Where a defendant demurred specially to a petition on the ground that the plaintiffs sought to recover upon inconsistent theories, and prayed that the petition be dismissed unless the plaintiffs elected upon which theory they would proceed, and where the court sustained the demurrer unless the plaintiffs made such election and struck from their petition all allegations in reference to their abandoned theory and the prayer for relief based thereon, which the plaintiffs did, the court did not err in then overruling the demurrer.

(*a*) The grounds of special demurrer to the 9½ paragraph of the petition as amended are without merit.

(*b*) The petition as amended did not set up contradictory and inconsistent causes of action, and the court did not err in overruling the demurrer setting up this ground.

3. In all cases where a trust is sought to be implied, the court may hear parol evidence of the nature of the transaction, or the circumstances, or conduct of the parties, either to imply or rebut a trust.

(*a*) While an express trust must be created by writing, and cannot be proved by parol, implied trusts may be established by parol evidence, although the effect of such evidence is to alter or vary a written instrument, and although the defendant sets up and insists upon the statute of frauds.

(*b*) The principle in Code § 3258, that "a deed or bill of sale, absolute on its face, and accompanied by possession of the property, shall not be proved (at the instance of the parties) by parol to be a mortgage only, unless fraud in its procurement is the issue to be tried," is not applicable to a case seeking to set up an implied trust.

(*c*) Promises which are made deceitfully for the purpose of accomplishing fraudulent designs, whatever may be their terms, do not, unless reduced to writing, raise express trusts; but the law, acting upon them according to their nature, makes them a basis upon which to build up in favor of the defrauded party an implied trust.

4. A trust is implied where, from any fraud, one person obtains title to property which rightfully belongs to another. An implied trust arises wherever a person acquires the legal title to land or other property by means of an intentionally false and fraudulent verbal promise to hold the same for a certain specified purpose; and after having thus fraudulently obtained title, he retains, uses, and claims the property absolutely as his own, so that the whole transaction by means of which the ownership is obtained is in fact a scheme of actual deceit.

5. The court did not err in overruling the motion of the defendant for a new trial upon any of the grounds thereof.

No. 3086. NOVEMBER 16, 1922. REHEARING DENIED DECEMBER 15, 1922.

Equitable petition. Before Judge Gower. Dooly superior court. December 23, 1921.

Mary E. Lane, Eudora McCorvey, Johnnie A. Tripp, Eliza Lilly by her next friend, R. S. M. Lilly, Annie L. Weavers, Myrtis Clewis, and Robert L. Dooling filed their petition in Dooly superior court against John Alfonso Jenkins Jr., Calvin E. Jenkins, Charlton M. L. Jenkins, Mrs. Ellen Jenkins, Mrs. Alice Calhoun, Mrs. Maggie Jenkins, and the Chickamauga Trust Company, and alleged the following facts: The first four petitioners are children of John A. Jenkins, late of Dooly county, deceased, and the last three are his grandchildren, being the children of Louett Dooling, a daughter of the deceased. All are legatees under the will of

John A. Jenkins, deceased, which has been duly probated at the October term, 1917, of the court of ordinary of said county. The first four petitioners are each entitled to a one-tenth undivided interest, and the last three are each entitled to a one-thirtieth undivided interest in the estate of said deceased testator. They are now entitled to their legacies under said will. After providing for his burial and payment of his debts, the testator devised to his wife for life land lot No. 128 in the second district of Dooly county in lieu of dower and year's support, and directed that after the death of his wife said land lot should be divided among his heirs in the manner thereinafter set forth. He directed that all the rest and residue of his estate, with the exception of said land lot, should be sold by his executor and the proceeds thereof be equally divided among his children and grandchildren, to wit: Mary E. Lane, Eudora McCorvey, Eliza Lilly, Johnnie A. Tripp, Calvin E. Jenkins, Alice Calhoun, Charlton M. L. Jenkins, Maggie Jenkins, John Alfonso Jenkins Jr., Annie L. Weaver, Myrtis Clewis, and Robert L. Dooling, the last three being his grandchildren and to take the share of their deceased mother, Louett Dooling, there being ten shares. He nominated Calvin E. Jenkins, Charlton M. L. Jenkins, and John A. Jenkins Jr., as executors of his will, which was dated Jan. 15, 1915. On the probate of his will Calvin E. Jenkins and Charlton M. L. Jenkins qualified as executors. John A. Jenkins Jr. failed to qualify.

The testator died on July 4, 1917, and left an estate consisting of both realty and personalty. His farm lands consisted of 2834-1/2 acres, more or less. He owned various town lots in the town of Dooling, which are set out and described in the petition; and 2-1/2 acres in land lot No. 25 of the first district of Dooly county, which is fully described in the petition. He left certain described personal property of the value of $12,000, and certain other personal property on his plantations.

On Sept. 8, 1915, John Alfonso Jenkins Jr., son of the testator, obtained from the latter a certain warranty deed, dated Sept. 8, 1915, and recorded in the office of the clerk of Dooly superior court, to all of the real estate, consisting of 2834 1/2 acres hereinbefore referred to. The alleged consideration was $9514 and the assumption of debts amounting to $41,724.64. On June 19, 1916, John Alfonso Jenkins Jr. likewise obtained from his father a

quitclaim deed, recorded in the office of the clerk of Dooly superior court, conveying exactly the same property as that embraced in the first deed from his father to him, and made to correct some errors of description in the first deed. On the date of the first of said deeds John Alfonso Jenkins Jr. went into possession of all of said real estate, claiming it as his own, as well as all the personal property hereinbefore mentioned, and has continued to claim the same as his own. Copies of said deeds are attached to the petition as exhibits. On June 23, 1916, John Alfonso Jenkins Jr. obtained from his father another certain warranty deed, recorded July 1, 1916, to 2-1/2 acres of land of lot No. 25 in the first district of Dooly county, fully described in the petition. At the time of making of said deeds the testator was incapacitated to transact business or make a valid warranty deed. He was about eighty-two or eighty-three years old, infirm of body and mind, and was so continuously from prior thereto to the date of his death; and he did not understand the purport of said deeds, was incapable of so understanding, and was incapacitated under the law of understanding the import of said deeds or to give a valid warranty deed; and said deeds, on account of the lack of mental capacity on his part to make the same, which was well known to said grantee at the time he procured them, are void.

John Alfonso Jenkins Jr. obtained said deeds from his father "through fraud and also through undue influence over him," and " procured them from him through false and fraudulent representations " that the making of said deeds was for the temporary purpose of enabling John Alfonso Jenkins Jr. to manage said estate and to protect the testator's interest, and was to have no binding force whatever. After having obtained said deeds, John Alfonso Jenkins Jr. " falsely and fraudulently " holds the same, and is now claiming to own all the property therein described in his own right.

The plantation of 2834-1/2 acres is well located near Dooling, and is reasonably worth $100,000, and was worth that sum on the date of the above-described deeds conveying it to said John Alfonso Jenkins Jr. Notwithstanding said value, the purported consideration in said deeds, especially in the one of Sept. 8, 1915, is only $51,238.64; and John Alfonso Jenkins Jr. paid none of this consideration, having, as hereinafter set out, obtained on said

land a loan of $40,000, and having received more personal property from his father, including the crop of 1915, than would be required to pay the remaining amount over and above said alleged consideration of $40,000. The consideration in said deed is wholly inadequate, and constitutes a badge of fraud as respects the bona fides of said conveyance. Value of the property conveyed by the deed of June 23, 1916, is $3000, while the consideration in said deed is only $125. John Alfonso Jenkins Jr., on July 1, 1916, conveyed by security deed said plantation to Chickamauga Trust Company, to secure a loan of $40,000. He had no title to said property, and said deed to Chickamauga Trust Company is void, the latter, prior to the execution thereof, having had full knowledge both as to the incapacity of said John A. Jenkins, deceased, to make a deed, and as to the false and fraudulent representations used by John Alfonso Jenkins Jr. by which he obtained the deeds from his father. Chickamagua Trust Company was fully aware of all the facts and circumstances of the execution of said deeds. The deed from John Alfonso Jenkins Jr. to said company is void as against petitioners, and should be canceled.

Calvin E. Jenkins and Charlton M. L. Jenkins, the qualified executors of the estate of John A. Jenkins, had full knowledge of all the facts surrounding the obtaining of said deeds by said John Alfonso Jenkins Jr., and also knew that the deed from the latter to Chickamauga Trust Company was null and void.

Petitioners made demand on said executors to take possession of all the personal and real property of the deceased, but each of them declined to do so. Petitioners have demanded that they bring a proceeding against John Alfonso Jenkins Jr., to recover said personalty and real estate, and to cancel as void the deeds from his father to him, and each has declined and refused to do so, or to take any steps whatever to protect the estate against the claims of said John Alfonso Jenkins Jr. The executors likewise refused to bring any proceeding on account of his indebtedness to the estate, or to bring any proceeding against him with reference to the void deeds from his father to him, and for the preservation of said estate, to the injury of petitioners. Said executors are in the employment of John Alfonso Jenkins Jr., they and their families being supported by him, and they are under his domination and influence, and are wholly controlled by him, and they

have colluded with him to defraud the estate of John A. Jenkins, deceased, out of the realty and personalty described above; and they have colluded with him to defraud petitioners of their rights and interest in said property. John Alfonso Jenkins Jr. purposely failed to qualify as executor, and purposely procured Calvin E. and Charlton M. L. Jenkins, his brothers, to qualify without him, so that he might the better carry out his purpose of fraudulently appropriating unto himself all the property of his father. The conduct and failure to act on the part of said executors will result in practically the entire property being appropriated by John Alfonso Jenkins Jr., to the injury of petitioners. Said executors contend now that the only property belonging to the estate of the decedent is the small portion of realty bequeathed by the testator to his wife for life, taking the position that the deeds from their father to said John Alfonso Jenkins Jr. are good, when they well know their invalidity on account of the incapacity of their father to have made or executed them, and the false and fraudulent representations by which said deeds were obtained.

Soon after obtaining the first deed on Sept. 8, 1915, John Alfonso Jenkins Jr. took charge of the entire crop of the farm for the year 1915, consisting approximately of 200 bales of lint-cotton of the approximate value of $10,000, 3000 bushels of corn of the approximate value of $2250, 20 tons of hay, approximate value $400, 12,000 bundles of fodder, approximate value $100, and other items of the crop of that year. John Alfonso Jenkins Jr. is indebted to said estate in said sums; or at least petitioners are entitled that he account to the estate for said sums, showing the disposition made thereof; and the executors decline and refuse to call him to an account or hold him liable for said items of personal property, During the years 1916 and 1917, John Alfonso Jenkins Jr. managed said farm for his own use and benefit, and he should account to the estate for the reasonable rental value thereof, amounting to $8000 or $10,000 a year. On this account and of the crop of 1915 he is indebted to said estate in a large amount of money, and there should be a full accounting with him as to all his acts and doings; but said executors decline and refuse to bring him to such accounting. Said John Alfonso Jenkins Jr., Calvin E. Jenkins, and Charlton M. L. Jenkins are insolvent.

Petitioners, in behalf of themselves and other legatees of said deceased, are entitled to judgment against John Alfonso Jenkins Jr., in such amount as may be found against him in favor of said estate, and are entitled to have said liens set up for same as against his interest, on account of the refusal of the executors to act; and petitioners are entitled to have a receiver to take charge of said estate, to preserve same under the orders of said court until the issues involved have been. adjudicated. Petitioners pray, that John Alfonso Jenkins Jr. be enjoined from incumbering, deeding away, transferring any bond for title, or in any manner changing the present status of the lands of his father; that Calvin E. Jenkins, Charlton M. L. Jenkins, and John Alfonso Jenkins Jr. be enjoined from further in any way interfering with any part of the estate of John A. Jenkins, deceased; that a receiver be appointed to take charge of all properties of deceased, and to manage, rent out, and protect same; that each of the deeds from said John A. Jenkins, deceased, to John Alfonso Jenkins Jr., be required to be delivered up and canceled as void; that the deed from John Alfonso Jenkins Jr. to Chickamauga Trust Company be delivered up and canceled; that all the property of the deceased be brought into court by appointment of a receiver and administered; that all of said estate be sold by such receiver, and, after paying the debts, the proceeds thereof be equally divided among petitioners and other interested parties; and that such other and further relief be granted them as might seem meet and proper.

Plaintiffs amended their petition by adding thereto two paragraphs, as follows:

" 9½.   These plaintiffs allege that even though the jury, on the trial of said case, should believe that John A. Jenkins Sr., at the time of making to John A. Jenkins Jr. the deed dated Sept. 8th, 1915, and the deed dated June 19, 1916, conveying real estate in parcel number one described in paragraph 4 of said petition, was of sound mind, and possessed of capacity to make said contract, these plaintiffs allege it to be the fact and the truth of said matter, that the sole purpose and consideration of each of said deeds, as agreed between both of said parties, at the times stated, was that the legal title to said land was to be put in the said J. A. Jenkins Jr. for the sole purpose of his obtaining a loan on said land from some loan company, for the benefit and the

use of the said J. A. Jenkins Sr., deceased; that the said J. A. Jenkins Jr., carrying out said purpose, did obtain a loan in the sum of forty thousand dollars from the Chickamauga Trust Company, by deed dated July 1st, 1916; that the equity and ownership of said land under the consideration and purpose of said deeds from said Jenkins Sr. to said Jenkins Jr. was to remain in and be the property of the said Jenkins Sr., and the said Jenkins Jr. was to have no other or further interest or title therein. These plaintiffs show that inasmuch as said deeds have served their purposes as above set forth, and the said Jenkins Sr. is now deceased, that said lands and the equity of redemption therein should be decreed to be in the estate of the said J. A. Jenkins Sr.

"10. These plaintiffs further amend their petition by adding thereto new prayers, to wit: 'K.' Petitioners pray that this court decree the equity of redemption and all rights and title to the real estate set out as parcel number one in paragraph 4 of said petition, into the estate of John A. Jenkins Sr., to be administered in accordance with law, for the benefit of these plaintiffs and such others as may be entitled thereto under the facts of this case and the law relating thereto." This amendment was allowed subject to demurrer thereto, and to the petition as amended.

On March 6, 1919, plaintiffs amended their petition and alleged as follows: At the time of the execution of said deeds from John A. Jenkins Sr. to John A. Jenkins Jr., and for a long time prior thereto, the maker was infirm in body and mind and very advanced in age; he had suffered injury from being thrown from his horse, and was addicted to the use of narcotic drugs, such as paregoric; prior to the execution of said deeds he had gradually become involved in debt, the debts increasing yearly; his creditors were numerous, increasingly importunate and exacting. Where formerly he had, in the prime and vigor of life, increased his fortune, added to his landed holdings, and enjoyed unsurpassed credit, so that he did not have to give mortgages and liens for the purpose of securing credit to run his farms, during the last several years prior to execution of said deeds his credit had become wrecked; he was unable to finance his farm; and while for a time, by giving security, he was able to tide along, in the end he was unable to secure credit. He was unable to pay taxes in 1914, and suffered sale of part of his lands for same. He was

unable to redeem the same prior to Sept. 8, 1915. He had defaulted in payment of some $1300 on interest on a long loan of a large amount, some months prior to execution of said deeds. His financial reverses, decline in business ability, and inability to meet obligations and run his farm preyed upon his mind, and, in his aged and infirm condition, conspired to depress him mentally and produce a feeble state of mind. Some time in 1915, John Alfonso Jenkins Jr., having become aware of his father's mental, physical, and financial condition, proceeded to advise him in relation to his business affairs, and probably at times advanced small sums of money or credit to his father, and began to outline plans whereby his father by placing his properties under the son's management would be able to secure a new loan, pay off his lien indebtedness, redeem his lands from said tax sale, and hold them together; and thereby acquired unlimited control over the mental faculties of his father. Under the circumstances surrounding his father as recited above, and the relation of confidence existing between father and son, shortly prior to the execution of the deed of Sept. 8, 1915, the son secured his father's consent that the title to the father's lands be placed in him, the latter representing that under such a conveyance he could and would procure a loan for the use of his father, that he would make no claim to the title thereto as against his father or his heirs at law, and made other statements set out in the original petition. Under this state of affairs and as a result of the importunities and representations so made, and the fraud practiced by John Alfonso Jenkins Jr., said deeds were executed. John Alfonso Jenkins Jr. at all times had it in mind to secure absolute deeds, with the intent to claim the title to the properties thereby conveyed, against his father and the latter's heirs at law. No money consideration passed from son to father for said conveyances. The mere obtaining of a loan by the son and payment of same on the debts of his father or on any balance of said loan, or the use thereof in improvements on lands conveyed in said deeds, did not constitute any fair or adequate consideration for said lands. The acts, conduct, and representations of the son which resulted in the procurement of said conveyances amount, in law and equity, under the foregoing facts, to undue influence over the father. By reason of said facts and circumstances the

beneficial interest in and equitable title to said premises never passed from father to son, who, in law and equity, became trustee of said property for the father and his estate. Relying upon statements and representations so made to him by his son, and being unduly influenced by the latter, the father, through ignorance, did not require any bond to reconvey, or other writing of the son, they expressly agreeing that said reconveyance should be made.

Plaintiffs struck all prayers for cancellation and prayed that for the above reasons a trust be declared and set up in said premises in their favor and those entitled thereto as the heirs at law of the deceased; and that the conveyances from the father to the son be decreed not to be absolute conveyances. This amendment was allowed subject to demurrer. By another amendment the plaintiffs struck from paragraph 9-1/2 of their first amendment all words beginning with the word "that," in the first line thereof, down to and including the word "was," in the ninth line thereof. By another amendment the plaintiffs struck out all allegations in their original petition setting up that the deeds from John A. Jenkins Sr. to John A. Jenkins Jr. were void because of the incapacity of the grantor make them, and because of fraud on the part of the grantee in procuring them; and struck the prayer for cancellation. By another amendment, the plaintiffs disclaimed title to the tract of land embraced in the deed of June 23, 1916.

Calvin E. Jenkins and Charlton M. L. Jenkins filed their answer in which they set up that they were entitled as executors to manage the estate of their testator under the terms of the will. They admitted execution of the deeds mentioned in the petition, and that John Alfonso Jenkins Jr. was in possession of the land thereby conveyed; and is in possession and holds same adversely to all persons, having gone into possession, claiming the land as his own, on the receipt of said deeds. They admitted the age of their father, but denied that his mind was wavering or weak, alleging, on the contrary, that he understood the import of said deeds, that the same were valid, and had been so regarded by them from the beginning. They further alleged that the full consideration of said deeds was paid, and was adequate under the circumstances existing at their dates; and that the loan deed to the Chickamauga Trust Company was valid in every particular,

and should not be cancelled. They admitted that they declined to bring any proceeding against John Alfonso Jenkins Jr., because they did not believe this ought to be done. They admitted being in his employment, but denied that they were under his domination, and denied any collusion with him to defraud anybody.

John Alfonso Jenkins Jr. answered the petition, and admitted that petitioners were children and grandchildren of his father, that they were legatees under his will (which had been duly probated in solemn form), and were entitled to the interests named in such property as then belonged to the estate of said testator, subject to its debts and obligations. He further set up that the widow had no interest in land lot No. 28, as his father had conveyed it to him. He admitted that the other persons named in the petition as legatees in the will were such. He had declined to qualify as executor, because he had been informed that the plaintiffs would attack the deeds from his father to him. He denied the substantial allegations of the petition on which the plaintiffs sought to recover. He further alleged as follows: He had advanced his father, at various times, more than $9000, to aid him in his distressed financial condition. His father was faced with an indebtedness of $60,000, and was afraid that he might be forced to give up his plantation to his creditors. In this situation the deed of Sept. 8, 1915, was made, under the agreement that the defendant would pay his father's debts, give him a comfortable home as long as he lived, and make some provision for the support of his stepmother. After receiving said deed, he built a nice dwelling to take the place of the old, dilapidated one, took his father and mother into his home, and kept his father there until his death, and his mother still resides there. The deeds were absolute conveyances of the property, and not made subject to any condition or trust.

John Alfonso Jenkins Jr. demurred to the petition as amended, on the grounds: (1) It is multifarious and duplicitous, containing two inconsistent and irreconcilable theories of plaintiffs' case. (2) It embodies two inconsistent and antagonistic bases of recovery. (3) It is multifarious and duplicitous, because in the original petition the right of plaintiffs to the relief sought is predicated upon a tort, while in the amendment the relief sought is on an alleged refusal of this defendant to limit the deed to

the limited purpose alleged; wherefore he prayed the court to require plaintiffs to elect on which of the two said theories or bases they would proceed, and, unless plaintiffs did so elect and strike from the petition all allegations inconsistent with the theory so elected, that petition be dismissed. (4) Specially to paragraph 9-1/2, on the ground that its allegations were not sufficiently specific to meet the requirements of law. (5) The same does not with sufficient definiteness set forth just what was done and said by John A. Jenkins Sr. and defendant at said time or times; the plaintiffs doing nothing more than asserting their conclusions as to the meaning and import of what was said and done by the parties, instead of alleging the facts in detail. The defendant filed a second demurrer on the ground, that the petition set up inconsistent and contradictory causes of action. The court sustained the demurrer and ordered the petition dismissed, unless plaintiffs elected to proceed upon one or the other basis of recovery referred to therein, and struck from their petition one or the other and all allegations in support of same. Plaintiffs having filed their amendment striking all allegations from the petition to the effect the deeds were void because of the grantor's mental incapacity, and the prayer for their cancellation, the court then passed an order overruling the demurrers. Defendant filed exceptions pendente lite to the order of the court overruling his demurrer and assigned error thereon.

The court referred so much of the petition as sought an accounting to an auditor, who made a report; and as no exceptions to it were filed, it was made the judgment of the court. Evidence in support of the allegations of the petition and the answer was introduced. The question of implied trust growing out of the facts hereinbefore recited was referred to a jury, who found in favor of the plaintiffs. The defendant moved for a new trial on formal grounds, and at the hearing amended his motion by adding the following grounds:

(1) That the court erred in permitting E. J. Dooling, a witness for plaintiffs, to testify, over objection of defendant, that John Alfonso Jenkins Jr. "said that the deed [meaning the deed of Sept. 8, 1915] was made in trust to him, and was to be returned back to his father when those debts were paid, and he got his father to make him this deed to make a loan; that his father was

30

too old to get a loan on his land, that the loan was to pay off the debts of John A. Jenkins Sr., and then it would revert back to the old man; " the objection urged to admission of said testimony being that it was irrelevant and immaterial, witness not being permitted to answer this question until after plaintiffs amended their petition and made the election hereinbefore referred to.

(2)   Because the court erred in permitting John F. Lane, a witness for plaintiffs, to testify, over objection of counsel for defendant, that " the mind of John A. Jenkins Sr. was no good on Sept. 8, 1915," said testimony being admitted after plaintiffs amended their petition, the objection being that it was immaterial to any issue in the case as then made by the pleadings.

(3)   Because the court erred in permitting R. S. M. Lilly, witness for plaintiffs, over objection of defendant, to testify that " the conduct of John A. Jenkins Sr. then, after other people talked to him, was unnatural," the witness having just testified that deceased was ill in 1912 or 1913, and was in a very feeble condition physically all the balance of his life, the objection urged being that such testimony was a mere statement of a conclusion with nothing on which to base it.

(4)   Because the court erred in permitting R. D. M. Lilly, witness for plaintiffs, over objection of defendant, to testify that " after the death of John A. Jenkins Sr., I went to the executors and told them what we wanted to do, what ought to be done; and Calvin said that he couldn't do it, that his hands were tied," the objection being that it was hearsay, was a transaction between other parties, and should not be permitted to affect defendant's rights or interest.

(5)   Because the court erred in ruling out, on motion of counsel for plaintiffs, because it was a conclusion of the witness, the following testimony of D. C. Ketchum, witness for defendant: " I would certainly say that John A. Jenkins Sr. was a sane man."

(6)   Because the court erred in permitting Mrs. Eudora McCorvey, a witness for plaintiffs, over objection of defendant, to testify that Mrs. Alice Calhoun, who previously testified for defendant, had stated during the week this case was tried, " Well, when it is all divided, I will get just as much as any of you will get. I will get my share," the objection being that such testimony

was not admissible against defendant, except to impeach the witness, and that no foundation had been laid for this evidence by asking the witness whether she made such statement.

(7) The court erred in refusing to rule out, on motion of counsel for defendant, the testimony of R. S. M. Lilly, witness for plaintiffs, " that there was a provision that the deed was to be made back," the ground of the motion to rule out being that it was immaterial and not binding on defendant.

(8) The court erred in permitting D. P. McCorvey, a witness for plaintiffs, over objection of defendant, to testify as follows: " I heard a conversation between my wife and Mrs. Alice Calhoun, one day the first of this week in this city. My wife and Mrs. Calhoun were talking something about this case and the outcome of the case, and the interest each one had in the case; and Mrs. Calhoun said, ' Well, I will get as much as either of you; and if you lose, I will get my part anyway,' " the objection being that it was hearsay.

Various grounds of the motion for new trial complained that the court erred in permitting witnesses for the plaintiffs to testify as set out below, over the objection that their testimony sought to engraft an express condition or trust upon the deed to the defendant and to vary the terms thereof; which grounds and testimony are as follows: (9) E. J. Dooling: " He [John A. Jenkins Jr.] said that the deed [referring to the deed from John A. Jenkins Sr. to John A. Jenkins Jr.] was made in trust to him, and that it was to be turned back to his father when those debts were paid, or rather a loan was made." (10) Mrs. Maggie Jenkins: John A. Jenkins Sr. said, in a conversation with her in the presence of John A. Jenkins Jr.: " You will see when my property is divided that Sam's children [referring to witness's children, witness being the widow of Sam Jenkins, son of John A. Jenkins Sr.] will share like the other children in the estate." (11) John F. Lane: Heard movant, after the execution of the deeds referred to in the petition, say to wife of witness: " Mary, I ain't doing a thing in the world against the girls [referring to the daughters of John A. Jenkins Sr.]; all I am doing is trying to take care of the estate, and I will vow to you that when Papa is laid away you will find it is like I tell you." (12) Mrs. John F. Lane: After execution of deeds re-

ferred to in the petition, defendant said to witness, " Well, Molly, I will guarantee you that everything will be there all right. You will get your part and share equally with the rest. Don't raise any fuss in his lifetime " (the lifetime of John A. Jenkins Sr.). (13) Calvin Jenkins: When the deeds from John A. Jenkins Sr. to John A. Jenkins Jr., referred to in the petition, were executed, the understanding between and among the witness and grantor and grantee was that the property should be transferred to John A. Jenkins Jr. with the understanding that it was to be only a power to get the loan, and that the property would then be operated by the three sons of John A. Jenkins Sr. and managed in the terms of the will of John A. Jenkins Sr., the property to go to the estate of John A. Jenkins Sr., and to be turned over to the estate when the estate and the property was worked out of debt. (14) Reuben Weaver: In the fall of 1915 he had a conversation with John A. Jenkins Jr., who then said to him: " They [referring to John A. Jenkins Sr.] had to make me a trust deed like we spoke of when I told you the Chickamauga Trust Company turned them down on account of Pap's age. I have got a trust deed to the whole thing, but the property is to go back after I pay off them debts and work it out, and when I work it out of debt it is to go back to the heirs."

(15) Because the court erred in charging the jury as follows: " In other words, the issue for you to determine, briefly stated, is whether the old man made a straight, unconditional, and absolute conveyance, under normal contractual relation for the purchase and sale of the lands mentioned in the deeds referred to, or were the deeds made under such circumstances, and with such reservations, that the young man took the property impressed with a trust. In other words, concisely and briefly stated, were the deeds absolute warranty deeds unconditionally conveying the property therein set out, or were the deeds made as trust deeds, or did the young man take the property so conveyed impressed with a trust? " the errors assigned being that the charge confined the defense of the defendant to the question of whether the deeds were absolute and unconditional conveyances, and excluded his defense that plaintiffs were seeking to set up an express trust.

(16) Because the court erred in charging the jury as follows: " On the subject of fraud, gentlemen, I charge you that fraud

may be actual or constructive. Actual fraud consists in any kind of artifice by which another is deceived. Constructive fraud consists in any act of omission or commission contrary to legal or equitable duty, trust or confidence justly reposed, which is contrary to good conscience and operates to the injury of another. The former implies moral guilt; the latter may be consistent with innocence;" the error assigned being that there was no evidence on which to warrant a charge on constructive fraud.

(17) Because the court erred in charging the jury as follows: "Now, gentlemen, take this case, go through it carefully, consider all the facts and circumstances, and all the testimony that has been adduced and admitted for your consideration, weigh them carefully and thoroughly, as I am sure you will, seeking diligently to find what the truth of this case is. That is the object of all legal investigations, to ascertain the truth of the issues. You may take into consideration all the facts and circumstances that have been detailed for your consideration as to the physical, mental, and financial condition of the deceased, J. A. Jenkins Sr.; you may consider all the facts and circumstances that surrounded his life in passing upon and determining the probability or improbability as to whether he entered into the arrangement and agreement, or understanding, or whether he executed the deeds mentioned in the petition as alleged and contended by the plaintiffs in this case. You may likewise take into consideration all the facts and circumstances surrounding the main defendants living with the deceased in this case, as they have come to you. You may likewise go into a consideration of the deeds;" the error assigned being that the court unduly emphasized the physical, mental, and financial condition of John A. Jenkins Sr.

(18) Because the court erred in charging the jury as follows: "You may likewise take into consideration, gentlemen, the condition of the parties to this deed, that is, the old man Jenkins and the young man Jenkins Jr., and consider all the facts and circumstances in connection with the consideration expressed in the deed; and if you find it to be the truth of the case that the consideration, if you find there was any consideration in the deed, was inadequate, that is, in connection with all the other facts and circumstances, justify you and lead you to the conclusion that the deeds were made under the circumstances and conditions as alleged

and contended by the plaintiffs in this case, for the purpose as alleged and contended by them, then and in that event it would be your duty and you would be authorized to find in favor of the plaintiffs in this case;" the error assigned being that the court unduly emphasized the respective ages of the father and son and the inadequacy of the consideration of the deeds.

(19)    Because the court erred in charging the jury as follows: "I call your attention to the fact that the plaintiffs in the case have, by proper pleadings and amendments, eliminated the question of total incapacity of the elder Jenkins, J. A. Jenkins Sr., deceased; and they have eliminated likewise the question of the cancellation of these deeds, as I have already given you in charge; and the issue and question for you to determine is whether the deeds were regular, normal, absolute, unconditional conveyances of purchase and sale, or whether the deed was made for the purpose and under conditions and circumstances which made it a trust deed, as alleged and contended for by the plaintiffs in this case," the error assigned being that it confined the defense to the theory that the deeds were unconditional and absolute, and excluded the defense that if they were not, the trust which arose was an express trust.

(20)    Because the court erred in charging the jury as follows: "If, on the other hand, you find and believe it to be the truth of the case, as alleged and contended by the defendants in this case, and particularly the defendant, J. A. Jenkins Jr., that this deed, or these deeds rather, were made by his father to him, as normal, straightforward, absolute, unconditional deeds of contract for purchase and sale, then and in that event you will be authorized and it will be your duty to find in favor of the defendant in the case.   In other words, if you find and believe it to be the truth of this case, as alleged and contended by the defendant, his contentions having been stated in detail to you by the court, then and in that event you would find in favor of the defendant; and the form of your verdict would be as follows: We, the jury, find the trust prayed for by the plaintiffs in the property described in the deeds dated Sept. 8, 1915, and June 19, 1916, from J. A. Jenkins Sr. to J. A. Jenkins Jr., be not set up, and be not declared.   Let  your foreman date it, and sign it, and return it into court;" the error assigned being that it

confined the defense to the question as to whether the deeds were unconditional and absolute, and excluded the defense that the trust sought to be set up was an express trust.

The court overruled the motion for new trial, and error was assigned on this judgment.

*Powell & Lumsden, Jule Felton,* and *Hall, Grice & Bloch,* for plaintiff in error.

*Whipple & McKenzie, Arthur S. Bussey,* and *Crum & Jones,* contra.

HINES, J. (After stating the foregoing facts.)

1. Did the amendments to the plaintiffs' petition set out a new and distinct cause of action? The original petition alleged that the father was of unsound mind, and did not have sufficient mental capacity to make the deeds in question to his son, who, with knowledge that his father was of unsound mind, by false and fraudulent representations induced him to execute said deeds. For these reasons the plaintiffs alleged that the deeds were null and void, and prayed that they be declared void, and be delivered up and canceled. By these amendments the plaintiffs undertook to set up and enforce an implied trust in favor of the father, growing out of the facts set up in the petition as amended. The original suit was brought to cancel deeds, because the maker was of unsound mind and the deeds were obtained by the son from the father by fraud and deceit. The amendments struck out the allegations of the petition that the deeds were void because the maker was mentally incapable of making them and because procured by fraud, and the prayers for their cancellation; and the petition, as amended, sought to set up an implied trust arising from the confidential relation existing between the father and the son, and the fraud perpetrated on the former by the latter in procuring these deeds, and added a prayer for the enforcement of this implied trust.

Plaintiffs and defendants, whether at law or in equity, may at any stage of the cause, as a matter of right, amend their pleadings in all respects, in matters of form or substance, if there is enough in the pleadings to amend by. Code (1910), § 5681. Clearly the right to amend is exceedingly broad. *Georgia R. &c. Co.* v. *Tice,* 124 *Ga.* 459 (52 S. E. 916, 4 Ann. Cas. 200). *Cox* v. *Ga. R. &c. Co.,* 139 *Ga.* 532, 533 (77 S. E. 574). Amendment is a resource

against waste. *Ellison* v. *Ga. R. Co.,* 87 *Ga.* 691, 697 (13 S. E. 809) ; *Atlanta &c. R. Co.* v. *Ga. Ry. &c. Co.,* 125 *Ga.* 798 (54 S. E. 753). The practice as to the allowance of amendments is very liberal. *Benning* v. *Horkan,* 123 *Ga.* 454 (51 S. E. 333) ; *Kemp* v. *Central Ry. Co.,* 122 *Ga.* 559 (50 S. E. 465) ; *Mendel* v. *Miller,* 134 *Ga.* 610 (68 S. E. 430). If an amendment is germane to the original cause of action, it should be allowed. *Patrick* v. *Cobb,* 122 *Ga.* 80 (49 S. E. 806) ; *Woodward* v. *Fuller,* 148 *Ga.* 239 (96 S. E. 323). Where an amendment does not set forth a different cause of action from that alleged in the petition, it is the right of the plaintiff, upon election, to amend. *Gabbett* v. *Atlanta,* 137 *Ga.* 180 (73 S. E. 372).

A plaintiff cannot go so far as to set up a new cause of action. When amendments make an entirely new case from that made in the original bill, they are not, on that account, admissible. *Rogers* v. *Atkinson,* 14 *Ga.* 320; Civil Code (1910), § 5683. " A cause of action is some particular legal duty of the defendant to the plaintiff, together with some definite breach of that duty which occasions loss or damage." *Ellison* v. *Ga. R. Co.,* supra. What particular legal duty did the plaintiffs assert against the main defendant, and what definite breach of that duty by him did they alleged in their original petition? They declared that this defendant obtained from his very aged father, who was mentally incapable of executing them, by fraud, deeds to his large and valuable landed estate, for a very inadequate consideration, by reason of which said conveyances are void, and, as heirs at law and legatees of the grantor, they prayed to have the same cancelled, and for recovery of their interest in this property. They alleged that, under these circumstances, it was the duty of this defendant to let them into their shares of the inheritance, and that his refusal to do so was a breach of this duty. This was their cause of action. In its last analysis it rested upon two legs, one of which was the mental incapacity of the father to make these deeds, and the other the fraud by which the son obtained the deeds. By their amendment the plaintiffs struck out all allegations touching the mental incapacity of the father; and left their case to rest upon fraud. The amendment struck out substance, but still left meat in their case. They likewise struck their prayer for cancellation. This amendment was destructive,

but plaintiffs had the right to make it. If it had gone to the vitals of their case, the defendant could not object to the amendment, but should have taken advantage of it by demurrer or motion to dismiss. *Vanderzer* v. *McMillan,* 28 *Ga.* 339.

But the amendments did not entirely destroy the case of the plaintiffs, but left it in court resting upon the ground that the defendant was holding this property as a vendee by fraud. The plaintiffs, in their several amendments, amplified and varied the details and circumstances of the fraudulent transaction by which the defendant acquired the deeds to the property; and then added an appropriate prayer that the defendant be decreed to be holding the property under an implied trust for the use and benefit of his father or the latter's heirs at law. This they could do by amendment. Civil Code (1910), § 5682; *Ellison* v. *Ga. R. Co.,* supra. In *Ansley* v. *Glendenning,* 56 *Ga.* 286, the amendment was not in aid of the original bill, but inconsistent with and destructive of it. Here the amendment was in aid of the original petition, and not destructive of it. In *Hart* v. *Henderson,* 66 *Ga.* 568, a wife alleged in her petition that she had bought property through the agency of her husband, who had been deceived as to its value by the vendor, and that she had paid its full value; and she prayed that the vendor be required to make title to her. This court held that she could not amend her petition by alleging that the husband bought the land for himself with her money, which the vendor knew, and praying for the recovery from the vendor of her funds so used. Clearly this amendment was not in aid of the original petition, but wholly inconsistent with and destructive of it. In *Horton* v. *Smith,* 115 *Ga.* 66 (41 S. E. 253), this court ruled that a suit to recover damages for breach of a contract could not be converted into an action for rescission of the contract and the cancellation of the deed made thereunder, on the ground of nonperformance by the defendant. Such amendment nullified the first cause of action, and set up an entirely new and distinct one. In *Roberts* v. *Atlanta Real Estate Co.,* 118 *Ga.* 502 (45 S. E. 308), a suit was brought against one as the principal and sole wrongdoer, to recover damages for alleged acts of trespass, and to enjoin the commission of future acts of trespass. An amendment was offered, alleging that both in the commission of the acts of trespass, and in the determination to repeat them in futuro, the

defendant was acting as the agent for another and under another's direction, and praying that the latter be made a party, and enjoined in like manner as the original defendant; and this court held that this amendment should have been stricken at the instance of the party to be added thereby, the latter objecting to its allowance on the ground that it set up a new and distinct cause of action. There is nothing in this decision which militates against our ruling in this matter. So we are of the opinion that the court did not err in allowing the amendments to the petition of the plaintiffs.

2. We will now consider the judgment of the court overruling the two demurrers of the defendant to the petition as amended. All the grounds of the first demurrer are special. The first three grounds attacked the petition and asked to have the same dismissed on the ground that the plaintiffs were seeking to recover on contradictory theories, and prayed that the plaintiffs be required to elect on which theory they would proceed. The 4th ground of this demurrer was leveled at paragraph 9-½ of the petition as amended, on the ground that the same was not sufficiently clear, there being no "unequivocal allegation that John A. Jenkins Sr. made a distinct limitation of the purpose of the deed referred to." The 5th ground is a special demurrer to this paragraph, on the ground that it does not with sufficient clearness set out what was done and said by John A. Jenkins Sr., the plaintiffs merely asserting their conclusion as to the meaning of what was said and done. The court sustained this demurrer unless the plaintiffs elected to proceed upon one or the other of the bases of recovery referred to therein and to strike from their petition all allegations in support of the abandoned ground of recovery. This the plaintiffs did; and thereupon the court overruled this demurrer. Defendant having gotten the relief asked on the three special grounds of this demurrer, there is now no merit in the contention that the court erred in overruling the demurrer so far as these grounds are concerned. We do not think the special grounds of demurrer aimed at paragraph 9-1/2 of the petition are well taken. *Eagan* v. *Conway,* 115 *Ga.* 130 (7) (41 S. E. 493). So the court did not err in overruling this demurrer after the plaintiffs elected to prosecute their action upon the ground that the defendant held the property in controversy under

an implied trust, and struck from their petition all allegations that the deeds were void on the ground that the maker was mentally incapable of executing them, and the prayer for their cancellation on this ground.

By his second demurrer the defendant demurred specially to the petition as amended, on the ground " that the same is multifarious and duplicitous, for that the same embodies and embraces two inconsistent and irreconcilable causes of action." The petition as amended does not set up inconsistent and irreconcilable causes of action. For this reason the trial judge did not err in overruling this special demurrer.

3. This brings us to consider the vital and important question involved in this litigation; and that is, whether an implied trust can be set up by parol evidence in behalf of the grantor when he conveys property by warranty deeds purporting to be absolute conveyances, when possession is delivered to the grantee. It is strongly urged by counsel for defendant, who is the grantee in the deeds, that the effort of the plaintiffs is to attach by parol an express trust or condition to these deeds, and that the evidence, resting entirely upon parol, introduced by the plaintiffs is intended to accomplish this end alone. It may be said that it appears from the proof that the grantor remained in possession of the large plantation involved in this litigation after he conveyed the same to the grantee; but it is alleged in the petition that the grantor delivered possession of the property embraced in these deeds to the grantee. Taking the allegations of the petition most strongly against the pleaders, we shall treat the question involved upon the theory that the grantee took actual possession of the lands embraced in the deeds, to the exclusion of the grantor.

Can an implied trust be set up by parol evidence against the grantee in deeds which purport to be absolute ones of bargain and sale with warranties of title, when the grantee is put in possession of the property under such conveyances? The contention is that to permit this to be done would violate the well-established rules, that " Parol evidence is inadmissible to add to, take from, or vary a written contract " (Civil Code (1910), § 4268, par. 1) ; that " in all cases where the parties have reduced their contract, agreement, or stipulation to writing, and assented thereto, it is the best evidence of the same " (§ 5752) ; and that

"A deed or bill of sale, absolute on its face and accompanied with possession of the property, shall not be proved (at the instance of the parties) by parol evidence to be a mortgage only, unless fraud in its procurement is the issue to be tried" (§ 3258). We shall undertake to show that the first two of the above-stated rules do not exclude parol evidence when the purpose is to establish an implied trust. Manifestly the third rule has no application to the case at bar, in which no effort is made to reduce absolute conveyances to mere mortgages. The Civil Code, § 3741, declares that "in all cases where a trust is sought to be implied, the court may hear parol evidence of the nature of the transaction or the circumstances or conduct of the parties, either to imply or rebut a trust." This is the rule applicable to the use of parol evidence to establish an implied trust, and fits the case at bar like a glove.

It is true an express trust cannot be proved by parol. It "must be created or declared in writing." Civil Code (1910), § 3733. This section was taken from the statute of frauds (29 Car. II, c. 3; Cobb's Digest, 1127, § 7). In the early history of this court it was held "that parol trusts of real estate may be established in direct contradiction to the statute, on the ground of fraud. And, that whenever a case of *fraud* is made by the bill, parol evidence will be received for the purpose of sustaining that case, even though the effect of such evidence be to alter or vary a written instrument, and although the benefit of the statute be insisted upon by the defendant." *Miller* v. *Cotten, 5 Ga.* 341, 346. Judge Nisbet well said: "I do not deny that parol trusts of lands may be enforced in equity upon the ground of fraud. Fraud, in such a case, is a sufficient reply to the statute. The statute, intended to prevent *frauds* as well as perjuries, cannot be made a cover for frauds." *Robson* v. *Harwell, 6 Ga.* 589; *Cameron* v. *Ward, 8 Ga.* 245. In *Adams* v. *Jones, 39 Ga.* 479, a case in many respects similar to the one at bar, this court held: "When a bill was filed, alleging fraud in the conveyance of land and other property, praying for an account and decree against the defendant: *Held,* 1. That the allegations in complainants' bill made a case of *fraud,* on the trial of which parol evidence was admissible to prove the fraud, and thereby raise an *implied trust* in favor of Jones and his family." "There is no law which re-

quires a fraudulent undertaking to be manifested by writing. Those who use promises, which they make deceitfully, for the purpose of accomplishing fraudulent designs, are generally careful not to furnish written evidence of their turpitude. Such promises, whatever may be their terms, do not, unless reduced to writing, raise express trusts; but the law, acting upon them according to their nature, makes them a basis upon which to build up in favor of the defrauded party an implied or constructive trust." For proof of· such implied trusts, resort may be had to parol evidence. *Brown* v. *Doane,* 86 *Ga.* 32, 38 (12 S. E. 179, 11 L. R. A. 381). While an express trust can only be shown by a writing, an implied trust may rest upon an express parol agreement, fraudulently made, by which a person acquires title to property of another; and in such case the express promise or agreement may be proved by parol to raise, not an express, but an implied trust.

4. Have the plaintiffs alleged and proved an implied or constructive trust? This depends upon what an implied trust is. Trusts are either express or implied. Civil Code (1910), § 3731. Express trusts are those created and manifested by a written agreement of the parties. Implied trusts are such as are inferred by law from the nature of the transaction or the conduct of the parties. § 3732. "Trusts are implied — 1. Whenever the legal title is in one person, but the beneficial interest, either from the payment of the purchase money or other circumstances, is either wholly or partially in another . 2. Where, from any fraud, one person obtains the title to property which rightfully belongs to another. 3. Where, from the nature of the transaction, it is manifest that it was the intention of the parties that the person taking the legal title shall have no beneficial interest." § 3739. The second paragraph of this section expressly recognizes trusts which arise *ex maleficio.* Such a trust " occurs whenever a person acquires the legal title to land or other property by means of an intentionally false and fraudulent verbal promise to hold the same for a certain specified purpose, — as, for example, a promise to convey the land to a designated individual, or to reconvey it to the grantor, and the like, — and having thus fraudulently obtained the title, he retains, uses, and claims the property as absolutely his own, so that the whole transaction by means of which

the ownership is obtained is in fact a scheme of actual deceit. Equity regards such a person as holding the property charged with a constructive trust, and will compel him to fulfill the trust by conveying according to his engagement." 3 Pom. Eq. Jr. (4th ed.) § 1055; *Brown* v. *Doane,* supra. "In such cases, a court of equity would take hold of the conscience of the defendants, and hold them as *trustees,* for the benefit of the party defrauded." *Cameron* v. *Ward,* 8 *Ga.* 245.

If the son procured from his father (who was over eighty years of age, feeble in body and mind, largely in debt, who was being pressed by his creditors for payment of their claims, who could not borrow money in his own name on his lands to discharge these pressing obligations, due to disinclination of lenders to make loans to very aged people who might at any time die and delay them in the collection of the interest and principal of their loans, and who was suffering mental torture due to his inability to pay his debts as he once had done) deeds to practically all his property of great value, upon the promise of his son to take his property so conveyed, borrow money thereon, and discharge his debts, and that the son would make no claim to the title thereto as against his father or his heirs at law, the son at the time intending to thus secure the title in himself for the purpose of setting up a claim to such property as his own, it would be inequitable and iniquitous to permit the son to carry out such a fraudulent scheme and to hold such property as his own against his father or the heirs of the latter. Under such circumstances, a court of equity will impress on such property an implied trust in favor of the father, and will declare the son to be the trustee holding the property for the use and benefit of the father, his heirs at law or legatees.

5. We come next to consider the grounds of the motion for new trial. The above rulings dispose of the 1st, 7th 9th, 10th, 11th, 12th, 13th, and 14th grounds of the amended motion for new trial, which complain of the admission of evidence tending to establish the implied trust set up by the plaintiffs, over objection of defendant that such testimony was irrelevant and tended to engraft upon his deeds an express condition or trust.

The court did not err in admitting the testimony set out in the second ground of the amended motion, that "the mind of John

A. Jenkins Sr. was not good on Sept. 8, 1915," on the ground that the same was immaterial to any issue made by the pleadings. This evidence was competent on the issue of whether any fraud was perpetrated by the son upon the father.

The court did not err in admitting the testimony set out in the third ground of the amended motion, on the ground that it was a mere statement or conclusion with nothing on which to base it. The witness had testified that the deceased was ill in 1912 or 1913, and was in very feeble condition physically all the balance of his life. The matter about which the witness testified was one of opinion, and the facts on which he based his opinion were given.

The testimony set out in the fourth ground of the amended motion was properly admitted for the purpose of showing that the plaintiffs, had made a demand upon the executors to bring suit to recover this property from the son, and that the executor referred to had declined to do so because, he said, his hands were tied.

The court did not err in ruling out the testimony set out in the fifth ground, to the effect that John A. Jenkins Sr. was a sane man, the same being a mere opinion of the witness without the facts upon which he based his opinion.

We think the court erred in admitting the evidence set out in the sixth and eighth grounds of the amended motion. This testimony consists of statements made by Mrs. Alice Calhoun, one of the defendants in the case, and was admitted by the court on the ground that she was a party defendant whose pertinent statements were admissible to bind herself. This party was only a nominal defendant; the real fight was between the plaintiffs and John Alfonso Jenkins Jr. The sole purpose of this evidence would be to affect the credit of this witness. The admissions of a nominal party to the record are not admissible. Civil Code (1910), § 5776. No foundation for impeachment was laid. Under these circumstances, the objection of the defendant that this evidence was hearsay was well taken, and this evidence should not have been admitted. However, we do not think that the illegal admission of this evidence should work the grant of a new trial, where the judge below, in the exercise of his discretion, refused to grant a new trial on this ground. Civil Code (1910), § 6083.

Grounds of the amended motion from 15 to 20, inclusive, deal with errors alleged to have been committed by the court in his charge to the jury. The error alleged in the instruction set out in the 15th, 19th, and 20th grounds is that they confined the defense of the defendant to the question of whether the deeds under which he claimed were absolute conveyances, and excluded the defense that the trust sought to be set up was an express trust. We do not think that the court committed error in giving these instructions. The real issue in the case was whether the deeds were absolute conveyances, or were made under such circumstances as to impress thereon an implied trust in behalf of the grantor.

Error is alleged on the instruction set out in the 16th ground, because there was no evidence upon which to base that portion relating to constructive fraud. This exception is not well taken. Both species of fraud are involved in this case. The error assigned upon the instruction set out in the 17th and 18th grounds of the motion is to the effect that the court unduly emphasized certain features of the evidence and certain facts sought to be established by the plaintiffs. This exception does not seem to be well taken. The court did not unduly emphasize the potent facts referred to. .

We find no error in the judgment of the court overruling the motion for new trial which requires its reversal.

*Judgment affirmed. All the Justices concur.*