## McCULLOUGH EXPORT LUMBER & WAREHOUSE CO. *et al. v.* NATIONAL BANK OF BRUNSWICK *et al.*

1. The Civil Code, § 5528, requires a judge, when a bill of exceptions is presented to him for his certificate, to change it, if needful, so as to make it conform to the truth. It is better practice, where corrections are made or suggested, to have the paper rewritten, but if the judge makes erasures or interlineations or writes in the margin or below the signature of counsel for the plaintiffs in error and then certifies the bill of exceptions as corrected to be true, such corrections will be considered as a part of the bill of exceptions wherever they precede the certificate of the judge.

2. Where such bill of exceptions is thus corrected by interlineations and by a note immediately preceding the certificate of the judge, and that certificate verifies the " bill of exceptions, as corrected by the court," this court will not dismiss the writ of error because of such certificate, where the interlineations and note do not in any way contradict any statement or recital remaining in the bill of exceptions, but merely give additional facts.

3. A commissioner, appointed by the court with the consent of all the parties at interest to sell the assets of an insolvent company at a sale to be reported by him to the court for confirmation, can not make a valid sale to a banking corporation in which he is a stockholder and director; and this is true although it is not shown that the property brought less than its value, and there is no allegation of unfairness in the sale. Such a sale is contrary to public policy, and will be set aside upon objection promptly urged.

Argued May 23, — Decided June 8, 1900.

Confirmation of sale. Before Judge Seabrook. Glynn superior court. August 22, 1899.

*Courtland Symmes* and *Spencer R. Atkinson,* for plaintiff in error. *Goodyear & Kay,* contra.

SIMMONS, C. J. 1, 2. Before proceeding to a discussion of the merits of this case, we will consider a motion made by counsel for the defendants in error to dismiss the writ of error on the ground that the trial judge's certificate to the bill of exceptions does not conform to the requirements of the Civil Code, § 5532. In this connection we will also notice the contention of counsel for the plaintiffs in error that a certain note or correction of the judge should not be considered as a part of the bill of exceptions. The bill of exceptions is typewritten, but contains two or three interlineations in pen and ink, which seem to be in the handwriting of the judge, though in no other way identified as his corrections. Further than this there is, immediately following the signature of counsel for the plaintiffs in error and immediately preceding the certificate of the judge, a "note" signed by the judge and containing a statement of fact additional to what is stated in the bill of exceptions proper. The certificate of the judge is in the usual form, except that it certifies the "bill of exceptions, as corrected by the court." It was urged by the plaintiffs in error that the "note" made by the court below the signature of the counsel for the plaintiffs in error could not be considered; that the law requires bills of exceptions to be signed by counsel, and nothing appearing below such signatures is any part of the bill of exceptions. The Civil Code, § 5528, requires that the judge to whom is tendered a bill of exceptions in a case where no motion for a new trial has been made "shall, if needful, change the same so as to conform to the truth and make it contain all the evidence, and refer to all the record, necessary to a clear understanding of the errors complained of." While it is the better practice for the judge to suggest what changes are necessary and have the bill of.exceptions rewritten before he signs it, still it is in his power to make, by erasures, interlineations, marginal notes or other notes which precede his certificate, the changes in the bill of exceptions which is presented to him. If he does so and then certifies the bill of exceptions as true, the changes will be considered as a part of the bill of exceptions. *Smith* v. *Rail-*

*road Co.*, 83 *Ga.* 671; *Joseph* v. *Ry. Co.*, 92 *Ga.* 332.  It would, of course, be much better and safer for counsel for the plaintiff in error, and less troublesome to this court, for the paper to be rewritten so as to come here without marginal or other notes or extensive interlineations; and we would respectfully urge the trial judges to have this done rather than to so mutilate the bill of exceptions by erasures, interlineations, and marginal notes that it is difficult for the court to read it or to determine the errors complained of.  In the present case the certificate is not in the usual form, but certifies the "bill of exceptions as corrected by the court."  This we think makes no difference in the present case, for the reason that the corrections do not in any way contradict anything remaining in the bill of exceptions.  Taking the whole bill of exceptions in its entirety, there is nothing in any one part to show that any other portion is not true.  We are clear, therefore, that the note of the court must be considered a part of the bill of exceptions, inasmuch as it precedes the certificate of the judge, and is expressly certified as a part of the bill of exceptions.  See *Preetorius* v. *Barnes,* 75 *Ga.* 313; *Masland* v. *Kemp,* 80 *Ga.* 365.  Indeed, we think that the corrections to which the judge's certificate refers must be taken to include this note, and that, unless the note be considered as a part of the bill of exceptions, there is no certificate that the remainder is true.  The bill of exceptions must be considered as certified only when corrected by this note, and unless we should consider the note, this court could not construe the certificate as certifying the bill of exceptions proper without the correction made in the note of the court.

As before remarked, an examination of the bill of exceptions and of the note of the court shows that the latter does not contradict any statement made in the former, but merely adds to it another fact.  We think that we can not sustain the motion to dismiss the writ of error.  The corrections made by the judge are simply additional statements of facts which had been omitted by counsel and which the judge thought necessary to a clear understanding of the case.  The material part of the corrections was to state that a certain decree or order was taken in open court by consent, with counsel for all parties present.  This does not contradict anything stated in the bill of exceptions as

presented to the judge. One of the interlineations simply specifies this decree as part of the record to be sent to this court, and the note of the court states that the decree was taken by consent. The bill of exceptions, as corrected by the judge, is certified to be true. The certificate is substantially in conformity with that prescribed by the code, and the case is controlled by the decision in *Pusey* v. *Sweat*, 92 *Ga.* 809. Counsel for the defendants in error relied upon the cases of *Hawkins* v. *Americus*, 102 *Ga.* 786; *Fort* v. *Sheffield*, 108 *Ga.* 781, and *Sanges* v. *State*, 110 *Ga.* These cases differ materially from the present one. In *Hawkins* v. *Americus* the certificate of the judge verified the bill of exceptions in part only, and showed it to be in part untrue. The opinion of Little, J., in that case, showed that this court had no jurisdiction of a writ of error when the judge did not certify that the bill of exceptions was entirely true. In *Fort* v. *Sheffield* the certificate was that the bill of exceptions, as modified by the note of the court, was true, and the note showed that the bill of exceptions was in large part not true. The note in that case sought to correct statements in the bill of exceptions without their having been canceled or erased, and we had before us two contradictory statements of fact, the bill of exceptions proper and the note of the court. It followed that the certificate of the judge did not verify the bill of exceptions as being entirely true. The case of *Sanges* v. *State* was very similar, and the writ of error was dismissed for the same reasons. In the present case the corrections of the judge did not change or contradict a single allegation or statement in the original bill of exceptions. It merely added to it, leaving the whole consistent in all of its parts, and the certificate verified it all as true. The motion to dismiss is, therefore, overruled.

3. Coming now to a consideration of the case on its merits, we find the facts to have been substantially as follows: Judgment was rendered against the McCullough Export Lumber and Warehouse Company, and, by a decree of the court to which all the parties at interest consented, Mark Verdery was appointed commissioner to sell the assets of the company. The decree instructed him to advertise the sale for a certain length of time in a certain newspaper, to sell the property at public outcry not earlier than a certain date, to knock off the property

to the highest and best bidder, and to report the sale back to the court for confirmation.   In compliance with the terms of the order he duly advertised the sale and sold the property at public outcry, the National Bank of Brunswick being the purchaser.   The commissioner made his report to the court, stating that he had complied in every way with the court's instructions and had sold the property to the highest and best bidder, the National Bank of Brunswick, and praying that the sale be confirmed.   Objections to the sale were filed by the defendant company and McCullough, on the grounds that the property sold for a sum far below its value; that Verdery was a shareholder and director in the bank, and therefore interested in the bank's purchase; that, being so interested, he was disqualified to act as commissioner to sell; that the counsel for the commissioner was also counsel for the purchaser, the bank, and was one of the shareholders of the bank; that the sale was made at a date earlier than was authorized by the decree of the court; and that the sale was, for these reasons, void, and should not be confirmed.   The issue was heard upon an agreed statement of facts, which was, substantially, that it was an open question whether the amount for which the property sold was more or less than its value, or more or less than it would bring upon a resale; that the purchaser, the bank, was and is a duly created corporation, and was and is the holder of a large part of the bonds upon which the suit had been brought; that Verdery, the commissioner, was and is a shareholder and director of the bank; and that the counsel for the commissioner was also counsel for the bank and a holder of stock of the bank.   It also appeared that the date of the sale was the very day earlier than which the court's decree had directed that the sale should not take place.   After argument, the court overruled the objections, and confirmed the sale.   To this the objectors excepted.

We think that the court should have sustained the objections filed, and have refused to confirm the sale.   It is recognized as a general rule that a trustee can not act for his own benefit in matters connected with the trust, and it is held that where a trustee becomes himself the purchaser of the trust estate, the cestuis que trust may set aside the sale, though it was at public auction, bona fide, and for a fair price.   The reason of the

rule is, that the trustee, as the representative of the trust estate, is interested in selling for the highest possible price, while he is at the same time, as the purchaser, interested in buying for the lowest possible price, and that it is against public policy to allow him to assume positions so inconsistent and so full of temptation, there being a direct conflict between interest and duty. So care- ful are the courts to place the trustee beyond the reach of all temptation, that the sale will be set aside without a consideration of the question whether or not there has been actual fraud, or whether the property did, as matter of fact, bring an inadequate price or sell for its full value. "The cestui que trust is not bound, to prove, nor is the court bound to judge, that the trustee has made a bargain advantageous to himself. The fact may be so, and yet the party not have it in his power distinctly and clearly to show it. There may be fraud, as Lord Hardwicke observed, and the party not be able to prove it. It is to guard against this uncertainty and hazard of abuse, and to remove the trus- tee from temptation, that the rule does and will permit the cestui que trust to come, at his own option and without show- ing actual injury, and insist upon having the experiment of another sale." Davoue v. Fanning, 2 Johns. Ch. 251. See also *Harrison* v. *McHenry*, 9 *Ga.* 164. If this be the rule where the trustee purchases for himself, it would seem to apply with equal force where he is only part purchaser or is interested in the purchase. Had the commissioner, in the present case, been the holder of all of the stock of the corporation purchasing the property, he would practically have been himself the purchaser; and the fact that he held an amount of stock less than all could make no difference in principle but only in degree. The same reason would necessarily control and demand the application of the same rule. The temptation might be lessened, but it would not be removed; and it is not against its existence in any specified or certain degree, but against its existence at all, that courts must guard. As was said by Chancellor Kent in Davoue v. Fanning, supra, "The distinction of its being a weaker temptation is too thin to form a safe rule of justice." In the present case there is no proof that the property brought less than its full value, and no allegation whatever of any fraud or irregularity in making the sale; but, as is said in High on Receivers (3d ed.), § 194, the rule

"is entirely independent of the question whether any fraud in fact has intervened." In the same section it is also stated that the rule applies "notwithstanding the sale is a judicial sale." In Covington & L. R. Co *v.* Bowler, 9 Bush, 468, where a judicial sale was set aside, the court said that "an agent or trustee can not rightfully place himself in a position exciting in his own bosom a conflict between self-interest and the duty he owes to those for whom he acts." And in the case of York Buildings Co. *v.* McKenzie, 8 Bro. P. C., decided in 1795 by the English House of Lords, and denominated by Chancellor Kent as "high and authoritative," the sale was a judicial one and was at public auction; the court had fixed an upset price, and confirmation by the court was necessary to complete the sale. The property was bid in by the "common agent" of the court, on whose information the upset price had been based; and it was held that he was in the nature of a trustee and incapacitated to become the purchaser, although the sale was a judicial and public one and the minimum price fixed by the court. Thus the fact that the sale was a judicial one, not to be complete until after confirmation by the court, is no reason why it should not be set aside. There was still an opportunity for fraud on the part of the commissioner which might not have been discoverable by the court. In such case disqualification is worked by the bare chance or opportunity for fraud. We have no reason to believe that Mr. Verdery did not, as matter of fact, act solely for the best interests of the owners of the property and without being in the slightest degree influenced by his personal interest in the purchase, but this can not affect the question at all. In the case of Dimes *v.* Canal, 3 H. L. Cas. 759, a decree was held voidable because the Lord Chancellor of England, who was disqualified from interest because a shareholder in an interested corporation, presided. This case was cited with approval in Livingston *v.* Cochran, 33 Ark. 294, where a sale was set aside because the purchaser was the probate judge who had ordered the sale, although the court said that he might have been perfectly innocent of any wilful or intentional wrong in the matter.

It was urged by counsel for the defendants in error that the confirmation of the sale was proper, because the defendant had, knowing that Verdery was a shareholder and director of the

bank, that the bank held a large part of the bonds, and that the bank might be compelled in order to protect itself to become the purchaser, consented to the decree appointing Verdery as commissioner. We think that a consent to the appointment of Verdery as commissioner to sell is in no sense a consent that he might become the purchaser at his own sale, or that the property might be bid in by a corporation in which he was pecuniarily interested. A knowledge that the bank held bonds was not knowledge that it would in any event become the purchaser at the sale. It was to be presumed that the property would at public and open sale bring its fair market value, and no one was chargeable with knowledge that the bank would be compelled, for its own protection, to buy in the property for more than it was worth.

For these reasons we think that the objections to the sale should have been sustained, and the sale set aside. We can not see any merit in the remaining grounds of objection to the sale, to wit, those relating to the disqualification of the commissioner's counsel and to the date of the sale, but, as we decide that the sale should be set aside upon other grounds, it is unnecessary to rule upon these.

*Judgment reversed.　All concurring, except Fish, J., absent.*