## REEVES v. CALLAWAY et al.

1. Where the value of property is a relevant fact, and a witness testifies to its value, a letter written by the witness fixing its value at a different sum, though written as much as two years prior to the transaction inquired about, is competent evidence.
2. An agent or attorney employed to sell property can not directly or indirectly become the purchaser without the principal's knowledge and consent. If the agent associates with himself in the purchase another person who has knowledge of the agent's relation to his principal, and the sale is made by the principal in ignorance of the agent's interest in the purchase, such sale will be set aside at the instance of the principal, who is not in laches, upon his offer to restore the status. In such case the law does not inquire whether there was fraud, but gives to the principal the absolute right to repudiate the transaction upon offering to do equity.

JUNE 11, 1913.

Equitable petition. Before Judge Bell. Fulton superior court. May 27, 1912.

E. C. Callaway sued out a warrant to dispossess J. M. Reeves as his tenant. Reeves filed a petition alleging as follows: Reeves owned certain city property and a farm tract; both were encumbered with liens. He applied to H. A. Etheridge for a loan to pay off these encumbrances. Etheridge procured a loan from Callaway, and the plaintiff executed what he supposed to be a deed to Callaway to secure its payment. Etheridge undertook to apply the amount of the loan to the payment of the liens on the plaintiff's property. The plaintiff alleged himself to be an ignorant negro man, without education and unacquainted with legal nomenclature. It turns out that the deed was made to Etheridge and not to Callaway. On the day when he executed the deed to secure the loan, Callaway and he entered into two written agreements wherein Callaway leased him the property he conveyed to Etheridge for a stated sum payable semi-annually, and gave him an option to repurchase it five years from date at a stipulated price. When he signed the instruments the plaintiff understood that one of them provided for a written extension of the loan for five years, and that the other was an obligation to pay the difference between this loan and the price at which he could repurchase the land as a bonus for making the loan. About four months after he executed the deed, Etheridge conveyed the land therein described to Callaway. The plaintiff gave possession of the city property to Callaway for the purpose of collecting the rents to be applied to his indebtedness to

Callaway, he retaining possession of the farm property. He prayed, for an accounting from Callaway and Etheridge as to the disposition of the money loaned to him, and as to the collection of the rents on the city property; for cancellation of the deeds; and for injunction against the warrant to dispossess him of his farm property. By amendment he alleged, that neither Callaway nor Etheridge paid out any money for him, but the whole transaction was a device to vest themselves with the title to his property; that, as illustration of such scheme, about four months after he conveyed his land to Etheridge, the latter procured on the land a loan for the same amount he promised to lend to the plaintiff, and then conveyed the land to Callaway; that plaintiff has paid Callaway and Etheridge all he is due them; and that he is willing to have the loan deed which Etheridge put on the land made a valid lien thereon. He renewed his prayer for an accounting.

A second amendment to the petition was allowed. It was alleged therein, that in all the transactions and negotiations which led up to the execution of the papers, under which Callaway claims title to the land, and in the execution of the papers, the plaintiff was represented by Etheridge as his attorney at law and confidential adviser; that at the time of the transaction he did not know that his attorney was to share with Callaway in the profits to be realized from the ownership of the property by Callaway, and was not aware of the fact until after the filing of this suit, and gained the information from an affidavit of Callaway used at an interlocutory hearing; that if the court should hold the transaction between himself and Callaway and Etheridge to be a sale of his property, he repudiated the sale, offering to pay any money found to be due them on an accounting between them, and prayed that the various papers be canceled.

Callaway and Etheridge answered, denying each and all charges of collusion and fraud. They averred, that plaintiff represented to them that the holder of the encumbrance on his property was about to sell him out, and that he would lose everything unless some one would come to his relief. Defendants made it clear to him that they could not loan him any money, but that they would buy the property outright and give him five years in which to buy it back at an advanced price, he in the meantime obligating himself to pay a reasonable rental therefor; and in the event he should buy it back,

he was to reimburse them for all sums expended on the property. The papers were carefully read over, and their purport was thoroughly understood by the plaintiff at the time of their execution. The plaintiff is not ignorant, but is a man conversant with and experienced in transactions of this kind. The plaintiff soon fell behind in his rent; he was indulged in his default, and given every opportunity to repurchase his property. He has allowed the property to go into disrepair, so that its market value is less than their investment in it.

The trial resulted in a verdict for the defendants, which the court refused to set aside.

*Daley, Chambers & Smith* and *Hines & Jordan*, for plaintiff.
*Westmoreland Brothers*, for defendants.

EVANS, P. J. (After stating the foregoing facts.)

1. It was relevant to an issue in the case to prove the value of the property at the time of the transaction between the parties. A witness was offered by the defendants to prove the value of the farm land. The plaintiff offered to put in evidence a letter written by the witness to a person not a party to the case, about two years before the transaction in issue, in which the value of the land was stated to be of a greater sum than that fixed by the witness. This letter was admissible in evidence as affecting the credit to be given the testimony of the witness in his estimate of the value of the land.

2. In the last amendment to his petition the plaintiff alleged that at the time he made the deed to Etheridge and in all the transactions connected therewith, the latter was acting as his attorney, and that he did not know that he was to share with Callaway in the profits to be realized from the ownership of the property by Callaway, and was not aware of this fact until after the filing of the present suit. His contention is, that, even if Etheridge was not acting as his attorney in procuring a loan, he was acting as his attorney in making a sale of the property in which both he and Callaway were interested in the purchase; that Callaway knew that Etheridge was acting as attorney for Reeves, but that he (Reeves) did not know of Etheridge's interest in the purchase of the property; and that under these circumstances the vendor, on discovering that his attorney was interested with the vendee in the purchase, could disaffirm the sale by offering to account for what has been paid out for his benefit. The testimony of Callaway and Etheridge

was, in substance, that Callaway refused to loan money on the property, but did agree to buy the property and give Reeves the option of buying it back within five years, provided Reeves would pay the rents and keep the premises in repair; that Reeves thoroughly understood the transaction; that the agreement between Reeves and Callaway was reduced to writing by Etheridge; that Callaway desired the title to be made to Etheridge, inasmuch as Callaway was in business, and it was contemplated to borrow the money on the property, and Callaway was apprehensive his credit might be affected by giving a loan deed. It was for this reason that the deed was taken in the name of Etheridge, who negotiated a loan on the property with Callaway's indorsement, and, after securing the loan by a deed to the lender, Etheridge conveyed the property to Callaway. Etheridge testified that he did not charge Reeves a fee for procuring Callaway to purchase the property, but acted more as a friend to help Reeves in settling the liens against the property so as to save something for him; that he compromised those claims so as to leave $181 of the purchase-money; of which sum he paid $165 to Reeves to buy for him a mule and retained $16 for his trouble in settling up these matters and clearing Reeves's title to the land. Callaway testified, "When I gave him [Etheridge] the check [for the purchase of the land], as to whether he was attorney for me or Reeves, he was just an attorney closing up the deal for both of us. As to whether he was acting as attorney for me or Reeves, he was acting as a party at interest with me. As to my knowing it to be a fact that he was acting as Reeves's attorney, he was transacting the business for Reeves. I think he was acting as Reeves's attorney." The check referred to was made payable to Etheridge as attorney. Both Callaway and Etheridge admitted that the land was bought with the expectation of a resale, under an arrangement between them that Etheridge was to share in the profits of the resale to the extent of one half. Reeves testified that Etheridge was his attorney at law in all the transactions, and that he did not know that he was interested with Callaway in the purchase until after the pendency of the present suit. On this phase of the case the court charged: "If you find that it was a sale, the plaintiff contends that it was such a sale as that he could and does repudiate, and it ought to be declared null and void, by reason of this last amendment filed by him, in which the plaintiff

contends that he employed Mr. Etheridge to secure him a loan, and that instead of that he made a sale of his property, and that he was inveigled into the sale, and under the policy of the law, the plaintiff contends, he would not be bound by it, and that the sale would be null and void. If he did not have knowledge at the time of the execution of the papers of what they contained, he could repudiate them and have them set aside." Exception is taken to this charge on the ground that it misstated the plaintiff's contention as alleged in his last amendment; that he was entitled to repudiate the sale upon discovery that his attorney was interested with the purchaser, upon restoring the status, which he offered to do; that he was entitled to repudiate this sale, because his attorney was secretly interested therein, regardless of his knowledge of the contents of the papers he executed.

The code declares, that, without the express consent of the principal after a full knowledge of all the facts, an agent employed to sell can not be himself the purchaser. Civil Code, § 3582. This principle applies as well to a case where the agent joins with a stranger, who has knowledge of the agency, in making the purchase as where the agent is the sole purchaser. In such case the proportion of the purchase-money paid by the purchasers is an irrelevant fact. It is immaterial whether the agent's partner in the transaction furnished all or a part of the money, if he knows of the agency and joins with the agent in the purchase of the property on joint account or for their mutual benefit. The policy of the law forbids an agent employed to sell to place himself in an attitude of antagonism to the interest of his principal, by associating himself with another in the purchase of the land; and a sale by an agent without the express consent of his principal to himself in association with another, with knowledge of his agency, will be set aside at the instance of the principal. It will be no defense for the agent and his associate to show that the agent acted in good faith, and that the transaction was in fact for the best interest of the principal. "The law does not inquire in such a case whether there is any fraud, but gives the principal the absolute right to repudiate the transaction, because it will not allow an agent to take a position which is so inconsistent with his duty to his principal." 1 Clark and Skyles on Agency, § 407.

The rule is not otherwise in a case where the agent to sell may

be an attorney at law. Indeed the law requires of an attorney the utmost good faith towards his client. Says Judge Story: "It is obvious that this relation must give rise to great confidence between the parties and to very strong influences over the actions and rights and interests of the client. The situation of an attorney or solicitor puts it in his power to avail himself not only of the necessities of his client, but of his good nature, liberality, and credulity, to obtain undue advantages, bargains, and gratuities. Hence the law, with a wise providence, not only watches over all the transactions of parties in this predicament, but it often interposes to declare transactions void, which between other persons would be held unobjectionable." 1 Story's Eq. Jur. § 310; *Stubinger* v. *Frey,* 116 *Ga.* 396 (42 S. E. 713).

In affording this right of repudiation to the principal on discovery that his attorney was interested in the purchase of the property in connection with another who knew of the attorney's relation to his principal, equity requires that the principal must do equity by a return of the purchase-money and restoration of the status. Ordinarily this is accomplished by a tender of the money. But where the transaction is involved and mutual accounts have sprung out of it, and the exact status can not be ascertained except from an accounting, a tender will be excused upon the principal's offering to account for what moneys he may be equitably due as a condition to rescission. The evidence in this case showed mutual accounts with many items, and an accounting was prayed.

The charge of the court did not correctly state the law applicable to the allegations of the last amendment, and a new trial must result.          *Judgment reversed. All the Justices concur.*