### SMITH *v.* HARVEY-GIVEN COMPANY.

No. 11202. APRIL 16, 1936. REHEARING DENIED MAY 15, 1936.

*Maddox & Griffin,* for plaintiff.

*Wright & Covington,* for defendant.

GILBERT, Justice. Mrs. Lottie Smith filed her petition against Harvey-Given Company, a corporation engaged in the real-estate business, alleging that she was the owner of and lived upon certain described realty in the City of Rome; that E. P. Harvey was the president of the defendant corporation and acted as its agent in dealing with the petitioner in the transactions complained of; that she owed certain taxes and assessments for paving, etc., aggregating $2700; that Harvey came to her and offered to sell the property; that during all of the transactions complained of he never intimated that he was acting for the defendant as buyer; that she accepted the offer of agency in full confidence that she was being represented as principal; that Harvey stated that "to avoid any doubt of his agency" he had prepared a paper for her to sign; and that she did sign it without reading it. Attached to the petition is an exhibit of the paper, being an option in favor of Harvey-Given Company for a consideration of $1, covering the property mentioned in her petition, and reading in part: "Should Harvey-Given Company exercise its rights under this option, the consideration agreed upon for said property is that they are to pay the entire balance due by me for street paving on the block designated as No. 334-A on the city tax-assessors plat, also the entire balance due by me for curb and gutter on said block. Also, two years taxes, both city and State and county, due by me, said taxes aggregating in the neighborhood of $300, and the purchaser is to pay all taxes

on the property covered by this option for the year 1934. I reserve and agree to move all buildings and building material now on said property, same to be moved at any time required by the purchaser. I agree to execute a clear warranty deed upon compliance with the terms hereinabove named. The property covered by this option being lots numbers 1, 2, 3, 4, 5, 6, 7, 8, 9, as shown on the W. A. and Mrs. Martha C. Smith subdivision, Plat Book I, page 87." Subsequently Harvey tendered to her deeds which she alleges she signed without reading, in full confidence in his good faith, and which she thought necessary to effect the sale to some third person. Further allegations as to the circumstances under which the negotiations began and as to representations made to her from time to time are hereinafter referred to, and need not be stated here. It appears that of the property deeded by her to Harvey-Given Company, a part was sold to Standard Oil Company; and she alleges the same is worth $4000, and that the defendant still retains title to a part of the property which she alleges is worth $2000. The petitioner is in possession of all of the property. She prays for a recovery of the property which was not sold to the Standard Oil Company and the title to which is still in Harvey-Given Company; that an accounting be had with the defendant; and that she recover such sum as may be found to be due her.

The defendant filed a demurrer upon the grounds that no cause of action is set forth in the petition; that no sufficient facts are alleged why the petitioner did not have full knowledge of the contents of the option; that no grounds of fraud are alleged which would justify the setting aside of the option; that sufficient grounds are not alleged to authorize the setting aside of the conveyances made to the defendant, or to show why the petitioner did not have full knowledge of the contents of the papers signed by her; that no sufficient fraud to justify the setting aside of the deeds is alleged; that the petition is defective in that it fails to pray for a rescission and cancellation of the deeds or contracts; that it does not affirmatively appear whether the petition is an action for fraud and deceit or an action for cancellation and rescission; and that the suit is duplicitous. The court sustained the demurrer, and the petitioner excepted.

■ The allegations of the petition are sufficient to withstand the general demurrer. It is urged by the plaintiff that a relation of

agency is shown by the allegations of the petition; that the defendant, acting as her agent, wrongfully sold the property to itself, imposing upon her confidence in its good faith in the instruments executed by her; and that she is in equity entitled to have an implied trust decreed upon the proceeds derived from the sale of the property to the Standard Oil Company and upon the property unsold and retained by the defendant. The defendant contends that no agency existed, and that the property was conveyed to it by Mrs. Smith pursuant to an option which she executed, and that all prior agreements are merged in the written instruments. It is upon the last-named theory that we apprehend the court sustained the general demurrer. Different legal principles apply to the respective hypotheses. Taking the allegations of the petition to be true, as must be done in considering the general demurrer, sufficient facts were alleged to constitute an agency. It is alleged that Harvey-Given Company, the defendant, engaged in the real-estate business and acting through its president and agent, Harvey, approached Mrs. Smith and offered its services in selling certain of her realty; that she accepted the offer without any agreement as to the amount of commission or the sales price, relying upon his judgment to obtain the best price possible as an old friend and one who had represented the family previously; that at no time did Harvey state that he was acting for his firm as purchaser; that, long before the deeds were signed or the option renewed the last time, he stated to her that he had succeeded in getting a friend to take up the executions against the property and to hold them pending the sale of the property, when in truth, and unknown to her at that time, the defendant had already had the executions transferred to it; that Harvey stated during the course of the transactions that he was trying to obtain the best trade possible for her; that he stated from time to time that he was meeting with difficulty in finding a purchaser, but would eventually sell the property for her; that under such circumstances she signed renewals of a paper which was in fact an option in favor of the defendant, but which Harvey had originally obtained from her upon his request that she sign the paper to avoid any doubt of his agency; that all of the papers, including the final deeds, were signed by her without reading them, in full confidence that they were executed to the rightful purchaser of the property; that before the execution of the deeds she offered

him two lots adjoining the property in question, as a special inducement to sell the property for her, and he expressed his agreement therein; that when agents of the Standard Oil Company were inspecting the property before purchase, and one remarked that all of the land was not needed, and the incident was reported to Harvey, he said that "they would pay for it whether they needed it or not;" that she received no consideration at the time of executing the deeds, though subsequently the executions in the amount of $2700 were delivered to her when she learned that a sale to Standard Oil Company had been consummated and she demanded settlement from the defendant; and that she was then informed for the first time that the paper she signed was an option and that she had executed deeds to Harvey-Given Company. These allegations show, not a relation of buyer and seller, dealing with each other at arm's length, but one of agency.

But it is urged by the defendant that the written instruments conclusively show the true relationship; that all prior oral agreements are merged therein; and that, having executed the papers, the petitioner is bound thereby as one sui juris and competent. At the very moment when the petitioner accepted the offer of the defendant to sell the property, the latter became her agent, and thereupon all the obligations of an agent to his principal became operative. "The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him." Code of 1933, § 4-101. In such a relation it is elementary that the utmost fidelity was thereby imposed upon the agent. The principal could in law rely upon his statements and representations, without the necessity of establishing their genuineness. When the agent tendered her the paper to sign "to avoid any doubt of his agency," she was not bound to read it to determine whether it was an option or a written ratification of the agency agreement. She had a right to presume that all papers tendered to her were as represented by the agent, and not contracts under which the agent could derive an interest in opposition to her own. "The relationship of principal and agent is a fiduciary one, and the latter can not make advantage and profit for himself out of the relationship, or out of knowledge thus obtained, to the injury of his principal." Stover v. Atlantic Ice & Coal Cor., 154 Ga. 228 (113 S. E. 802). "It is contrary to public policy for an agent, with-

out the full knowledge and consent of his principal, to do any act, or make any contract, in carrying out the business of his agency, the effect of which will be to bring the personal interests of the agent in antagonism with those of the principal." *Sessions* v. *Payne,* 113 *Ga.* 955 (39 S. E. 325). "Without the express consent of the principal after a full knowledge of all the facts, an agent employed to sell may not himself be the purchaser." Code of 1933, § 4-204. See also *Mayor &c. of Macon* v. *Huff,* 60 *Ga.* 221; *Hodgson* v. *Raphael,* 105 *Ga.* 480 (30 S. E. 416); *Mitchell* v. *Gifford,* 133 *Ga.* 823 (67 S. E. 197); *Reeves* v. *Callaway,* 140 *Ga.* 101 (2) (78 S. E. 717). The reasons for these restrictions upon the agent are well stated in *Mayor &c. of Macon* v. *Huff,* supra: "So that the current of Georgia's policy, both in legislative and judicial channels, runs steadily in one direction and to one point, that no man who is agent or trustee for another, whether a private or public agent or trustee, shall have the opportunity or be led into the temptation to make a profit out of the business of others entrusted to his care, by bargaining with himself, directly or indirectly, in respect to that business." Or, as stated by Mr. Chief Justice Russell in *Reserve Loan Life Insurance Co.* v. *Phillips,* 156 *Ga.* 372, 377 (119 S. E. 315): "The law properly follows the Gospel. 'No servant can serve two masters; for either he will hate the one and love the other, or else he will hold to the one and despise the other.' Luke, 16th chapter, 13th verse." See also *Dorsett* v. *Garrard,* 85 *Ga.* 734, 740 (11 S. E. 768); *Clark* v. *Clark,* 167 *Ga.* 1, 4 (144 S. E. 787); *Cochran* v. *Thomasville,* 167 *Ga.* 579, 582 (146 S. E. 462), and cit.

For other cases showing that an agent can not make a secret profit, etc., see *McCullough Export &c. Co.* v. *National Bank,* 111 *Ga.* 132, 137 (36 S. E. 465); *Whitley* v. *James,* 121 *Ga.* 521 (2) (49 S. E. 600); *Ausley* v. *Cummings,* 145 *Ga.* 750, 757 (89 S. E. 1071): In *Whitley* v. *James,* supra, it was held: "A conveyance by an agent authorized to sell, if made to a corporation of which he is president and a stockholder, may likewise be treated as void by the principal." In *McCullough Co.* v. *National Bank,* supra, it was held that a commissioner appointed by the court can not sell to a banking corporation in which he is a stockholder and director, although there is no allegation of unfairness in the sale. It is declared in the Code of 1933, § 4-205, that "The agent shall not

make a personal profit from his principal's property; for all such he is bound to account." In § 4-313 it is declared: "The principal shall have advantage of his agent's contracts in the same manner as he shall be bound by them, so far as they come within the scope of his agency." In *Reeves* v. *Callaway,* supra, it was said: "It will be no defense for the agent and his associate to show that the agent acted in good faith, and that the transaction was in fact for the best interest of the principal. 'The law does not inquire in such a case whether there is any fraud, but gives the principal the absolute right to repudiate the transaction, because it will not allow an agent to take a position which is so inconsistent with his duty to his principal.' 1 Clark and Skyles on Agency, § 407." Bearing in mind these principles, it is to be noted that the petition alleges that the agent, having obtained, through the confidence of his principal, title to her property, sold a portion thereof to the Standard Oil Company for $4000, making no report of the sale, and, when confronted with a demand for settlement, informed the petitioner that, except as to the executions which were then delivered to her, she had no interest in the matter, having executed, as they asserted, an option and deeds to the defendant. Taking the allegations as true, facts were set forth which would authorize a court of equity to decree an implied trust in favor of the petitioner upon the proceeds of the sale of the property to the Standard Oil Company and upon the property unsold and remaining in the hands of the defendant. It is well settled that an implied trust can be set up by parol evidence. "In all cases where a trust is sought to be implied, the court may hear parol evidence of the nature of the transaction, or the circumstances, or conduct of the parties, either to imply or rebut a trust." Code of 1933, § 108-108. See also *Pound* v. *Smith,* 146 *Ga.* 431, 435 (91 S. E. 405) ; *Simpson Grocery Co.* v. *Knight,* 148 *Ga.* 410 (96 S. E. 872) ; *Summerour* v. *Summerour,* 148 *Ga.* 499 (97 S. E. 71) ; *Jenkins* v. *Lane,* 154 *Ga.* 454 (3) (115 S. E. 126) ; *Stern* v. *Howell,* 160 *Ga.* 261 (127 S. E. 776) ; *Jansen* v. *Jansen,* 180 *Ga.* 318, 321 (178 S. E. 654). In *Stover* v. *Atlantic Coal & Ice Cor.,* supra, from which we have quoted that the relation of principal and agent is a fiduciary one, it was also held that "the agency being established, the agent will be held to be a trustee as to any profits, advantages, rights, or privileges under any contract made and obtained within the scope and by

reason of such agency; and where the agent invests such profits in property or places the same to his credit in a bank, he will be held to hold the same as trustee for the principal, and the latter can maintain in a court of equity an action to trace such profits into such investments, and to enjoin the agent or his donee from selling, disposing of, or encumbering any such profits or any property in which the same have been invested. Civil Code (1910), §§ 3739, 3780; *Forlaw* v. *Augusta Naval Stc~es Co.,* 124 *Ga.* 261 (6) (52 S. E. 898); United States *v.* Carter, 217 U. S. 286 (30 Sup. Ct. 515, 54 L. ed. 769, 19 Ann. Cas. 594)."

On the subject of implied trusts a good statement is to be found in *Jenkins* v. *Lane,* supra (154 *Ga.* 476): "It is true an express trust can not be proved by parol. It 'must be created or declared in writing.' Civil Code (1910), § 3733. This section was taken from the statute of frauds (29 Car. II, c. 3, Cobb's Digest, 1127, § 7). In the early history of this court it was held 'that parol trusts of real estate may be established in direct contradiction to the statute, on the ground of fraud. And, that whenever a case of *fraud* is made by the bill, parol evidence will be received for the purpose of sustaining that case, even though the effect of such evidence be to alter or vary a written instrument, and although the benefit of the statute be insisted upon by the defendant.' *Miller* v. *Cotten,* 5 *Ga.* 341, 346. Judge Nisbet well said: 'I do not deny that parol trusts of land may be enforced in equity upon the ground of fraud. Fraud, in such a case, is a sufficient reply to the statute. The statute, intended to prevent *frauds* as well as perjuries, can not be made a cover for frauds.' *Robson* v. *Harwell,* 6 *Ga.* 589; *Cameron* v. *Ward,* 8 *Ga.* 245. In *Adams* v. *Jones,* 39 *Ga.* 479, a case in many respects similar to the one at bar, this court held: 'When a bill was filed, alleging fraud in the conveyance of land and other property, praying for an account and decree against the defendant: *Held,* 1. That the allegations in complainants' bill made a case of *fraud,* on the trial of which parol evidence was admissible to prove the fraud, and thereby raise an *implied trust* in favor of Jones and his family.' . . 'Trusts are implied—1. Whenever the legal title is in one person, but the beneficial interest, either from the payment of the purchase-money or other circumstances, is either wholly or partly in another. 2. Where, from any fraud, one person obtains the title to property which right-

fully belongs to another. 3. Where, from the nature of the transaction, it is manifest that it was the intention of the parties that the person taking the legal title shall have no beneficial interest.' § 3739 [Code of 1910]. The second paragraph of this section expressly recognizes trusts which arise ex maleficio. Such a trust 'occurs whenever a person acquires the legal title to land or other property by means of an intentionally false and fraudulent verbal promise to hold the same for a certain specified purpose,—as, for example, a promise to convey the land to a designated individual, or to reconvey it to the grantor, and the like,—and having thus fraudulently obtained the title, he retains, uses, and claims the property as absolutely his own, so that the whole transaction by means of which the ownership is obtained is in fact a scheme of actual deceit. Equity regards such a person as holding the property charged with a constructive trust, and will compel him to fulfill the trust by conveying according to his engagement.' 3 Pom. Eq. Jr. (4th ed.), § 1055; *Brown* v. *Doane,* supra. 'In such cases, a court of equity would take hold of the conscience of the defendants, and hold them as *trustees,* for the benefit of the party defrauded.' *Cameron* v. *Ward,* 8 *Ga.* 245." The principles stated in the case from which we have just quoted apply to the instant one. The defendant, the agent of the petitioner, could not use or hold the property except for the benefit of Mrs. Smith. On account of the fiduciary character of the relation, she might knowingly have put the title in the agent for the purpose of sale, and yet the latter would hold as trustee and be liable for an accounting for all profits received therefrom. It appears that Mrs. Smith has been delivered the tax and paving executions which were outstanding against the property, and to that extent the defendant is entitled to credit in the accounting which is prayed. Upon equitable principles she is, under the allegations of her petition, entitled to have an implied trust decreed upon the funds derived from the sale of the property to the Standard Oil Company and to the property unsold and still retained by the defendant, and to have an accounting as prayed.

■ The second headnote does not require any elaboration.

■ The court erred in sustaining the demurrer and in dismissing the petition. *Judgment reversed. All the Justices concur.*