A93A0664. REMEDIATION SERVICES, INC. v. GEORGIA-PACIFIC CORPORATION.
(433 SE2d 631)

ANDREWS, Judge.

Remediation Services, Inc. sued Georgia-Pacific Corporation for amounts claimed due for dredging services seeking to recover under breach of contract or on quantum meruit. Remediation appeals from the grant of summary judgment in favor of Georgia-Pacific.

1. Georgia-Pacific moved for summary judgment on the contract claim based on the defense that it was entitled to declare the dredging contract void because it was defrauded by one of its own employees, who without the knowledge of Georgia-Pacific, represented both Remediation and Georgia-Pacific as a dual agent in the dredging contract transaction.[1] The facts establish that Ronnie Presley was employed as an environmental engineer for Georgia-Pacific, and was regarded as the company's expert on dredging projects like the one at issue. In that capacity, Presley determined the scope of the dredging project at issue, suggested bidders for the project, and recommended Remediation as the bidder most qualified to do the work. Remediation was eventually awarded the dredging contract in August 1990 for the sum of $827,106.43. During the course of the contract, Presley assisted in reviewing progress on the dredging, and recommended additional amounts in excess of $100,000 paid to Remediation under a provision in the contract for dredging of material added to the original contract specifications.

---

[1] Georgia-Pacific also contended that it was not the proper defendant in this suit because Remediation had initiated the dredging contract with Nekoosa Papers, Inc., a wholly-owned subsidiary of Georgia-Pacific. In granting summary judgment, the trial court did not reach this issue, nor does this opinion.

Remediation fell behind the contract requirements for completion of the work, and disputes developed in which Remediation contended it was unable to complete the work as scheduled for the contracted price because the original "scope of work" describing the materials to be dredged, and the work to be done upon which the bid was entered, was not accurate. Ultimately, Georgia-Pacific terminated Remediation in March 1991 with the project still uncompleted after Remediation had been paid a total of $768,850.37. Remediation filed the present action in October 1991 seeking recovery of $1,734,240 as damages for breach of contract plus expenses and attorney fees.

After the suit was filed, Georgia-Pacific discovered that since Remediation was formed in 1987, Presley has owned 50 percent of the outstanding shares of the corporation, and has been listed as its Chief Executive Officer in corporate documents filed with the Secretary of State. The trial court was authorized to conclude that affidavits filed by Remediation in opposition to summary judgment did not create an issue of fact as to Presley's ownership of 50 percent of the stock of the corporation. In sworn responses to interrogatories, Remediation stated that Presley owns 50 percent of the outstanding stock, and that the company had solicited the return of his stock on several occasions. The subsequent affidavits admitted Presley obtained 50 percent of the outstanding shares when the corporation was formed in 1987, and that the shares remained in Presley's possession, but denied Presley owned the stock claiming there was an agreement prior to the present contract for Presley to surrender the shares for no payment. In the absence of any reasonable explanation for this contradiction, the trial court was authorized under the contradictory testimony rule to eliminate the testimony favorable to Remediation, and conclude that Presley has owned 50 percent of the shares of Remediation since 1987. *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (343 SE2d 680) (1986); *Thacker v. Matthews Tuxedo*, 183 Ga. App. 474, 475 (359 SE2d 231) (1987). A question of fact remained as to whether Presley remained as an officer of Remediation during the period of the transaction at issue. Although corporate documents reflected he was an officer, other testimony showed that the remaining officers and stockholders, Robert Chaney and Bill Arant, conferred with Presley at a June 1987 meeting of the board of directors of the corporation, and Presley was removed as president and chief executive officer of the company, and replaced by Chaney.

Evidence also showed that the other two stockholders and officers of Remediation knew Presley was employed by Georgia-Pacific when Remediation entered into the contract at issue. However, affidavits filed on behalf of Remediation also stated that Presley had no involvement in the operation or management of Remediation since 1987, and had not received any compensation from Remediation, di-

rectly or indirectly since that time. Remediation further denied having any contact with Presley concerning the procurement of the contract, the specifications for the contract, the bidding procedure, or negotiations on the contract. Other evidence showed that in November 1990, Presley sent a copy of a Georgia-Pacific intra-company memo to Remediation indicating his monitoring and assessment of the dredging process and the problems incurred by Remediation. Furthermore, Remediation's March 1991 letter to Georgia-Pacific by its acting president, Chaney, stated that Chaney was of the opinion from the start of the dredging project that Presley was overseeing or responsible for it being done. Presley denied having exerted any influence in his duties at Georgia-Pacific over the award and administration of the contract. There is no evidence that Presley had the authority to award the bid to Remediation, or enter into the dredging contract with Remediation on behalf of Georgia-Pacific.

The following principles apply to the defense raised by Georgia-Pacific to the contract claim:

"The law imposes upon every agent the obligation to exercise, for and in behalf of his principal, skill, loyalty, and absolute good faith. It is of the essence of the contract of the agent that he will use his best skill and judgment to promote the interest of his employer. This the agent can not do if he is the agent for both parties. To represent both parties as their agent is to undertake inconsistent duties. A mutual agency requires the consent of both principals to the mutuality of the agency. An agent can not use his best skill and judgment to promote the interest of his employer where he acts for two persons whose interests are essentially adverse. Such a situation places the agent under a temptation to deal unjustly with one or both of his principals. He thus commits a fraud on his principals in undertaking, without their consent or knowledge, to act as their mutual agent. . . . Where the agent of the vendor is also the agent of the purchaser, the effect of the dual agency would be to authorize the vendor to repudiate the transaction, if he acts promptly after discovery of the situation. Where an agent without the full knowledge and consent of his principal represents the adverse party in a transaction, his contracts relating thereto are voidable at the option of the principal. It follows that the purchaser could equally repudiate the transaction. . . . [In the case of a contract] executed in whole or in part [such defrauded principal] may by acting promptly and before the rights of innocent parties have intervened, upon restoration of any benefit which he has received, rescind the contract and recover back the property or rights with which he has parted under it. It makes no difference that the principal was not in fact injured, or that the agent intended no wrong, or that the other party acted in good faith. This doctrine is based upon the ground that the double agency is a fraud upon the principal,

and that by reason of such fraud he is not bound by any transaction entered into with the other party." (Citations and punctuation omitted.) *Napier v. Adams*, 166 Ga. 403, 406-408 (143 SE 566) (1928); see also *Smith v. Harvey-Given Co.*, 182 Ga. 410, 414-416 (185 SE 793) (1936); *Franco v. Stein Steel &c. Co.*, 227 Ga. 92, 95 (179 SE2d 88) (1970); OCGA § 10-6-24 (agent may not buy or sell for himself); OCGA § 10-6-25 (agent may not make a personal profit from the agency). The same general considerations apply to prohibit an agent from buying from or selling to his principal, without the principal's knowledge (OCGA § 10-6-24), and to prohibit an agent from making a secret profit while acting on behalf of his principal. OCGA § 10-6-25. Accordingly, dual agency per se is not prohibited, nor is a contract made through a dual agency void per se, rather the contract created is voidable by the principal, only where the dual agency is unknown to the principal. *Spratlin, Harrington & Thomas, Inc. v. Hawn*, 116 Ga. App. 175, 178-180 (156 SE2d 402) (1967). Where dual agency is relied on as a defense to a breach of contract claim, the defendant principal must prove the fact of such agency, and his lack of knowledge. Id. at 179.

It is undisputed that Georgia-Pacific had no knowledge of Presley's interest in Remediation until after the contract was terminated. Accordingly, we must determine whether the facts establish as a matter of law that Presley acted in the capacity of a dual agent for Georgia-Pacific and Remediation. "The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." OCGA § 10-6-1. "At times and in some contexts we have tended to equate servant with agent, but the relationships are very different. At common law, and in all of the jurisdictions of this country . . . the difference in concept is fundamental and substantial. Generally the servant performs work or labor for the master, sometimes skilled and sometimes not, while the agent, within the ambit of his authority, represents his principal in some business dealing. He is vested with authority, real or ostensible, to create obligations on behalf of his principal bringing third parties into contractual relations with him. Perhaps it is oversimplification, but it has been generally said that agency relates to business transactions, while the work of a servant relates to manual service. The agent may, at times serve both as servant and agent, doing labor and exercising a given authority, but the servant rarely does. An agent thus is some person authorized to act for another arising when, expressly or impliedly, there has been a delegation with more or less discretionary power to act, to manage an affair, and to render an account." (Citations and punctuation omitted.) *Headrick v. Fordham*, 154 Ga. App. 415, 416-417 (268 SE2d 753) (1980). "Essentially an agent has authority to establish contrac-

tual relations with third parties and his principal." *Lane Co. v. Taylor*, 174 Ga. App. 356, 362 (330 SE2d 112) (1985).

Nevertheless, we have refused to limit application of the dual agency rule to render a contract voidable based on technical distinctions between an agent authorized to contract for the principal, and a broker who may not have authority to bind the principal, but is involved in the contract negotiations. *Spratlin*, supra at 182. Like an agent, a broker has a duty to act in good faith, and may not act for persons having interests adverse to his employer without the employer's consent. Id. at 183. "A broker is simply a middleman, . . . [and under an exception to the rule prohibiting dual agencies], when he has no duty to perform but to bring the parties together, leaving them to negotiate and to come to an agreement themselves, without any aid from him. If he takes, or contracts to take, any part in the negotiations, however, he cannot be regarded as a mere middleman, no matter how slight a part it may be." (Citations and punctuation omitted.) Id. at 183.

Remediation argues that Presley was not an agent, but merely an employee of Georgia-Pacific, and, therefore, the contract was not voidable under the dual agency rule. The relationship of employer-employee is generally that of arms-length bargaining, and not one from which the law necessarily implies the confidentiality of principal and agent. *Cochran v. Murrah*, 235 Ga. 304, 307 (219 SE2d 421) (1975). However, depending on the facts, a confidential relationship may be shown between employer and employee. Id. at 307. Under OCGA § 23-2-58, "[a]ny relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." All the law requires is the showing of a relationship in fact which justifies the reposing of confidence in one party by another. As provided by OCGA § 23-2-53: "Suppression of a material fact which a party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." "[OCGA § 23-2-53] expressly goes beyond the strict fiduciary relations of the parties and states that the obligation to communicate may arise 'from the particular circumstances of the case.' The same is true as to [OCGA § 23-2-58]." *Cochran*, supra at 307.

Thus, the facts of a particular case may demonstrate an employee has a confidential relationship with his employer with respect to a business transaction related to his employment, which places upon him obligations similar to the fiduciary obligations of an agent to his

principal. An employee, even though he may have no authority to contract for his employer, may, nevertheless, occupy a position of trust and confidence with his employer. An employee who uses that position to involve himself in any part of negotiations with a third party, who he also represents without his employer's knowledge, has placed himself in a conflicting position analogous to that of an undisclosed dual agent. See Restatement 2d, Agency, § 25. Of course, "[a]n agent [or employee] may perform mere ministerial acts, involving no discretion, for one of the parties to the contract, though he is agent for the other party. He is forbidden to act for both only when there is opportunity that the skill and judgment which he should exercise for the one may conflict with the skill and judgment he should exercise for the other." *Spratlin*, supra at 182.

In this case, the facts establish as a matter of law that, in his employment for Georgia-Pacific, Presley was intimately involved in the negotiations leading to and the continuing administration of the contract with Remediation. Moreover, Presley engaged in this conduct while holding a 50 percent ownership interest in Remediation. Even though there may be a jury question as to whether Presley acted as an agent for Remediation, it is not necessary under the present facts that an agency relationship be established. Presley's 50 percent ownership interest in Remediation, unknown to Georgia-Pacific, is sufficient to make the dredging contract voidable at the election of Georgia-Pacific. "Thus, an agent who is appointed to sell or to give advice concerning sales violates his duty if, without the principal's knowledge, he sells to himself or purchases from the principal through the medium of a 'straw,' or induces his principal to sell to a corporation in which he has a large concealed interest. See the Restatement of Trusts, § 170. The agent's failure to reveal that he has an interest in the transaction is sometimes spoken of as fraudulent. If the agent intends to take advantage of the principal, the epithet, with its implication of immorality, is justified. But, irrespective of the words used to characterize the agent's conduct, such a transaction can be rescinded by the principal although the agent acts in good faith and without consciousness of wrong doing." Restatement 2d, Agency, § 389, Comment a.

Remediation further argues that summary judgment should have been denied because Georgia-Pacific was not entitled to rescind the contract for fraud without restoring or offering to restore the value of Remediation's services under the contract, which Remediation claims is the sum of $1,734,240. Generally, where one claims he was defrauded by an undisclosed dual agent, and invokes the right to repudiate the contract, he must offer to return the other party to the status quo. *Reeves v. Callaway*, 140 Ga. 101, 106 (78 SE 717) (1913). Restoration by the purchaser is not an absolute rule, but requires

only that the supplier be placed substantially in his original position, and that the rescinding party derive no unconscionable advantage from the rescission. *Crews v. Cisco Bros. Ford-Mercury*, 201 Ga. App. 589 (411 SE2d 518) (1991). "One seeking to rescind a contract for fraud must restore or tender back the benefits received under the contract, or show a sufficient reason for not doing so; he need not tender back what he is entitled to keep, and need not offer to restore where the defrauding party has made restoration impossible ([cit.]), or when to do so would be unreasonable." Id. at 590. The tender rule is that neither party may retain an unfair advantage. Id. Accordingly, where rescission is sought to undo the contractual transaction, a flexible and pragmatic approach has been adopted toward the tender requirement. *Brown v. Techdata Corp.*, 238 Ga. 622, 627 (234 SE2d 787) (1977).

No tender is required where the party seeking to rescind has received nothing of value, or where any amount received under the contract may be less than the amount due to the party seeking to rescind. *Metter Banking Co. v. Millen Lumber &c. Co.*, 191 Ga. App. 634, 637-638 (382 SE2d 624) (1989); *Corbitt v. Harris*, 182 Ga. App. 81, 82-83 (354 SE2d 637) (1987) (overruled on other grounds, *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (405 SE2d 474) (1991)); *Thomson v. Walter*, 160 Ga. App. 542, 544 (287 SE2d 562) (1981). A review of the present transaction shows a dispute in which Georgia-Pacific claims to have paid Remediation amounts in excess of the value of the services performed, and that Georgia-Pacific is entitled to recovery. Equity does not require a tender under these circumstances.

Accordingly, the trial court properly granted summary judgment in favor of Georgia-Pacific on the breach of contract claim.

2. The trial court also granted summary judgment to Georgia-Pacific on Remediation's alternative quantum meruit claim. The court reasoned that if the contract was voided because Presley defrauded Georgia-Pacific as a dual agent, Remediation has unclean hands, and may not seek relief on the basis of quantum meruit.

Although "one is estopped to recover on quantum meruit where there exists an express agreement" (*Willis v. Kemp*, 130 Ga. App. 758, 760 (204 SE2d 486) (1974)), where the agreement has been repudiated, or is not otherwise enforceable as a valid express contract, and ceases to be the criterion under which the parties' rights and liabilities are measured, a recovery in quantum meruit is authorized to the extent of the value of the work to the defendant, not the plaintiff's cost of producing the result to the defendant. *Brumby v. Smith & Plaster Co.*, 123 Ga. App. 443, 444 (181 SE2d 303) (1971); *City of St. Marys v. Stottler Stagg & Assoc.*, 163 Ga. App. 45, 46 (292 SE2d 868) (1982).

The trial court erred in granting summary judgment in favor of

Georgia-Pacific on the quantum meruit claim. The voiding of a contract at the election of the principal on the basis of an undisclosed dual agency will not prevent an action in quantum meruit to recover the value, if any, of the services received by the principal. A quantum meruit recovery may be prohibited where the nature of the contract itself rendered it entirely void for being in contravention of public policy in its totality. *Genins v. Geiger,* 144 Ga. App. 244, 245 (240 SE2d 745) (1977); see *Sapp v. Davids,* 176 Ga. 265 (168 SE 62) (1933) (champerty); *Standard Club v. Saphire,* 97 Ga. App. 135 (102 SE2d 72) (1958) (sale of gambling devices). Such is not the case where, as here, the nature of the transaction, dredging services, was not intrinsically illegal, but the contract was voidable only at the election of the defrauded principal. See *Genins,* supra at 245-246. Similarly, where a contract is illegal only in part, recovery is allowed on a quantum meruit basis for the part of the services which was legal. *Iteld v. Karp,* 85 Ga. App. 835, 838 (70 SE2d 378) (1952). The principal is not made to suffer the consequences of the fraud, since recovery in quantum meruit is measured by the value of the work, if any, to the defendant, not by the plaintiff's cost of producing the work.

*Judgment affirmed in part and reversed in part. Pope, C. J., and Birdsong, P. J., concur.*

DECIDED JUNE 22, 1993 —
RECONSIDERATION DENIED JULY 13, 1993 — 

*John T. Croley, Jr.,* for appellant.
*Sumner & Hewes, William E. Sumner, David A. Webster, Andrew A. Davenport,* for appellee.